## A00A0424. KIGHT v. THE STATE.
### (528 SE2d 542)

ELDRIDGE, Judge.

Johnny Kight appeals from the denial of his motion for new trial, which followed his jury conviction on rape, statutory rape, and numerous counts of aggravated child molestation and child molestation involving four children. Without challenging the sufficiency of the evidence, Kight instead asserts that some of the trial court's evidentiary rulings constituted reversible error. Finding no such errors, we affirm.

> On appeal[,] the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility.

(Citations omitted.) *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990). See also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The allegations in this case arose following a June 17, 1993

"sleep-over" at the home of M. H., who was 11 years old at that time. Two other eleven-year-old girls, S. P. and C. C., spent the night. All three girls testified at trial that Kight, who was M. H.'s stepfather, convinced them to play a math game in the style of "strip poker," i.e., the children had to take off an item of clothing when they missed a math problem. After the girls were naked, Kight pulled down his pants and underwear, started "playing with" his penis, and shook his buttocks at them. He also told them "dirty jokes," showed them "nasty" pictures, and gave them cigarettes. Later that night, after the girls went to bed, Kight came back into the room, climbed into bed with C. C., rubbed his penis against her genital area, and asked her to perform oral sex. He left when she refused. After S. P. and C. C. went home the next day, C. C. told her mother and stepfather about the molestation. C. C.'s stepfather is also M. H.'s father, having divorced M. H.'s mother in 1988 or 1989. After hearing C. C.'s report about what transpired at the sleep-over, M. H.'s father summoned M. H. to his home, where he questioned her the next morning. During his trial testimony, M. H.'s father stated that he expected M. H. to repeat C. C.'s description of the sleep-over but, instead, M. H. told him that Kight had repeatedly performed various sexual acts with her over the past several months, including oral and anal sodomy. Enraged, M. H.'s father contacted State child protection authorities and took the children to an emergency room.

Police officers conducted individual videotaped interviews with the girls. After the trial court made an initial reliability determination under the Child Hearsay Statute, OCGA § 24-3-16,[1] the officers testified at trial regarding the girls' statements.

The officers also testified that, during the investigation of the sleep-over case, molestation accusations arose concerning a fourth girl. The girl, 11-year-old J. G., testified at trial that she had spent a few nights at M. H.'s home while her mother was in the hospital. One night, Kight attempted to force her to perform oral sodomy on him, but she successfully resisted by hitting him in the stomach. The next night, Kight forced M. H. to hold J. G. down while he performed anal sodomy on J. G. A few days later, she woke up to find that Kight had climbed into her bed. Kight raped J. G.

In addition to the testimony of the officers and the four victims, the State presented the testimony of the girls' parents, emergency room physicians who examined the girls, and a counselor who specializes in abused and battered children and interviewed two of the girls. With minor exceptions, all of the testimony was consistent with the facts as stated above. The State also presented the similar trans-

---

[1] See Division 1, infra.

action testimony of Kight's half-sister and her daughter (his niece), who both testified that, when they were between six and twelve years old, Kight had molested them, attempted to sodomize them, and threatened them if they told anyone.

The jury convicted Kight on all counts. Kight appeals from the denial of his motion for new trial. *Held*:

1. In his first enumeration of error, Kight challenges the trial court's determination that the parents' testimony regarding statements made to them by the girls was admissible under the Child Hearsay Statute, OCGA § 24-3-16. Under the statute, a witness may testify about a statement made by a child under the age of 14 which describes sexual contact with a third party "if the child is available to testify in the proceedings and the court finds that the circumstances of the statement[s] provide sufficient indicia of reliability." OCGA § 24-3-16. See also *Allen v. State*, 263 Ga. 60, 61 (2) (428 SE2d 73) (1993) (reaffirming the constitutionality of the statute). In determining whether the statements are inherently reliable,

> [t]he factors which the court may consider, when applicable, include but are not limited to the following: (1) the atmosphere and circumstances under which the statement was made (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type of coaching and circumstances surrounding the same; and, the nature of the child's statement and type of language used therein; and (10) the consistency between repeated out-of-court statements by the child. These factors are to be applied neither in mechanical nor mathematical fashion, but in that manner best calculated to facilitate determination of the existence or absence of the requisite degree of trustworthiness. Nor does the fact that the statement is made days, weeks, or even several months after the alleged incident, in and of itself make the statement unreliable.

(Citations and emphasis omitted.) *Gregg v. State*, 201 Ga. App. 238, 240-241 (411 SE2d 65) (1991). See also *Dumas v. State*, 239 Ga. App. 210, 219 (521 SE2d 108) (1999) (Eldridge, J., concurring specially). Further, "the trial court has broad discretion in determining the

admissibility of [child hearsay] evidence." (Citation and punctuation omitted.) *Wallace v. State*, 228 Ga. App. 686, 688 (492 SE2d 595) (1997).

In making its determination of the reliability of the girls' statements to their parents in this case, the trial court heard evidence regarding the circumstances of such statements. This evidence included all of the facts upon which Kight now relies in asserting that the statements were inherently unreliable. After hearing the evidence, however, the trial court rejected Kight's arguments and specifically found that the State demonstrated the statements' reliability under *Gregg v. State*, supra.

Having reviewed the entire record, this Court finds that the trial court correctly determined that the statements were sufficiently reliable to justify admission into evidence. At the time the statements were made, the girls were 11 years old. There was no evidence of coaching by the parents or others. The parents denied threatening the children in any way. None of the girls were under the influence of alcohol or mind-altering drugs.[2] The testimony of all of the witnesses was detailed and extremely consistent. Although the testimony of one parent displayed some minor inconsistencies, this was an issue of the weight and credibility of the evidence, not its admissibility. *Gregg v. State*, supra at 241 (3) (c); *Ware v. State*, 191 Ga. App. 896, 897 (2) (383 SE2d 368) (1989).

> In addition, the record shows the victim[s] testified at trial and [were] subject to examination and cross-examination. Thus, [Kight] had every conceivable opportunity to examine and cross-examine the [children] in the presence of the jury, regarding the [children's] memory of and the circumstances surrounding [their] making of each of the out-of-court statements in question, and had the opportunity to allow the jury to judge the [children's] demeanor in response to any examination or cross-examination about the alleged making and veracity of these previous statements. This procedure provided an additional safeguard to [Kight's] right of fair trial, and provided [Kight] full opportunity for confrontation.

(Punctuation omitted.) *Wallace v. State*, supra at 688-689 (2), citing *Gregg v. State*, supra. Accordingly, the trial court did not abuse its

---

[2] Kight attempts to create an issue out of the fact that, at the time she told her mother of the abuse, S. P. was "in the hospital under the influence of medication." The hospitalization, however, was for an unrelated, infected dog bite, and the medication was an antibiotic. The trial court expressly considered these circumstances when determining that S. P.'s statements to her mother were reliable.

discretion in admitting the parents' testimony under the Child Hearsay Statute.

2. Kight claims that the trial court erred in allowing the State to present the similar transaction testimony of Kight's half-sister and niece, because the State did not notify him of its intent to introduce such evidence ten days before trial, pursuant to Uniform Superior Court Rule 31.1. As a result, Kight asserts that he was unable to investigate and challenge the testimony presented and was denied his right to effective confrontation of the witnesses.

Under USCR 31.1, however, the trial court has the discretion to shorten or lengthen the ten-day notice period, depending on the circumstances of the case. *Robinson v. State*, 257 Ga. 194, 195 (1) (357 SE2d 74) (1987); *Hall v. State*, 181 Ga. App. 92, 93 (1) (b) (351 SE2d 236) (1986). In deciding whether to admit the similar transaction evidence, the trial court considered the following, undisputed facts: the State found out about the similar transactions while interviewing family members approximately five days before trial. The State immediately notified Kight's attorney, picked him up, and transported him to the witnesses' home. The witnesses were not there, but the State supplied the attorney with the names, phone numbers, and other information about the witnesses. Kight's attorney admitted to the trial court that "I have no doubt that he notified me as soon as he knew about it." The similar transaction hearing was conducted during the trial, 12 days after the State discovered the allegations and gave notice thereof to Kight's attorney. During the hearing, the State showed that, upon discovery of the allegations, it investigated whether criminal charges had been brought against Kight based upon these allegations, but no criminal records of any sexual misconduct were found. The State also showed that the similar transactions all occurred in the same neighborhood as those at issue in this case and involved family members who still lived in the area and were accessible to both the State and Kight's attorney.

After considering all of the circumstances, the trial court ruled that the State had substantially complied with the notice requirements; that the notice given was reasonable; and that the defendant would not be prejudiced to the extent that it would amount to a denial of his rights. We find no abuse of discretion in the trial court's ruling.

3. In his final enumeration of error, Kight claims that the trial court erred in denying him the opportunity to effectively cross-examine Kight's half-sister, a similar transaction witness. This enumeration lacks merit.

The witness testified, consistently and in detail, about the sexual abuse inflicted upon her as a child by Kight. Kight thoroughly cross-examined the witness about the details of these allegations. Then

Kight attempted to question the witness as to whether, *in addition* to accusing Kight of molestation, she had ever accused her father of molesting her. After the State objected on the basis of relevancy, Kight told the trial court that he was attempting to demonstrate the witness' "state of mind" regarding her allegations of childhood sexual abuse and thereby raise an issue of the witness' credibility. The trial court sustained the State's objection.[3]

This Court will not interfere with a trial court's determination regarding relevancy absent an abuse of discretion. *Karvonen v. State*, 205 Ga. App. 852, 854 (424 SE2d 47) (1992). In this case, however, it is unnecessary to determine whether the trial court abused its discretion in limiting Kight's cross-examination because, on appeal, Kight asserts an entirely different purpose for his cross-examination regarding the witness' other allegations of abuse. Kight now claims that the evidence was necessary to show that it was the witness' *father, not Kight,* who molested her as a child. In other words, Kight seems to be launching a new attack on appeal regarding the "identity" requirement for admission of similar transaction testimony. See *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991). "It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal." (Citations and punctuation omitted.) *Reinhardt v. State*, 197 Ga. App. 825, 828 (4) (399 SE2d 729) (1990). As such, Kight's enumeration of error has been waived.

4. This Court has reviewed Kight's remaining allegations and finds that they lack merit, are not supported by the record, or both.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED JANUARY 20, 2000 — ■

*King, King & Jones, David H. Jones, William R. Wansker,* for appellant.

*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Elizabeth A. Baker, Assistant District Attorneys,* for appellee.

---

[3] The trial court, however, granted Kight the opportunity to perfect the record regarding any such credibility evidence, which Kight failed to do.