## A03A0035. NUNEZ v. THE STATE.
(575 SE2d 735)

ELDRIDGE, Judge.

A Whitfield County jury found Elio Oziel Nunez guilty of rape, false imprisonment, and simple battery, arising from acts Nunez perpetrated against an ex-girlfriend. Without challenging the sufficiency of the evidence against him, Nunez appeals, asserting error in the State's choice of interpreter in this case, as well as claiming the State improperly bolstered the victim's testimony. Upon review of the record, we find Nunez's contentions to be meritless and affirm his conviction.

The pertinent facts of record show that both the defendant and the victim are Hispanic and speak limited English. Consequently, both the State and Nunez came to court with their own interpreters. The State's interpreter was Mary Lou Gonzales. Nunez's interpreter was Mr. Aymat.

Prior to the start of the State's case, the trial court swore in Gonzales with a translator's oath to accurately and impartially interpret the questions asked and the witness' responses. No objection was made to Gonzales. The State called the victim as its first witness. Gonzales translated into Spanish the State's questions asked in English and then translated the victim's Spanish responses into English.

From the beginning of the victim's testimony, Gonzales' translation of the victim's testimony could not be heard. Counsel for Nunez objected immediately: "I cannot hear the interpreter when she's translating back into English. Could you ask that she speak up please." Shortly thereafter, the trial court was forced to admonish

Gonzales, "Let me instruct the interpreter, when you're speaking English, speak up loud enough so that all of us can hear." During direct examination, the victim testified that, after the police were called following the rape, her 12-year-old niece, Kathy, acted as the translator between the victim and the police.

At the conclusion of the direct examination of the victim, counsel for Nunez requested a conference, and the jury was removed from the courtroom. Apparently, Nunez's interpreter, Aymat, determined that the victim was confused by some of Gonzales' Spanish translations of the State's questions. Using Aymat, the trial court permitted counsel for Nunez to voir dire the victim regarding her ability to understand the State's questions as translated by Gonzales. Such voir dire revealed that the victim had been confused only about questions relating to the amount of time she had known Nunez. She did, however, testify that she felt more "comfortable" with Aymat's translation of English questions into Spanish and that Aymat's Spanish was "better" than Gonzales' Spanish.

Nunez made a motion for mistrial, contending "there's some serious doubts with respect to the reliability of [the victim's] testimony and the interpretation, . . . absent a better verification of the translator's [(Gonzales')] qualifications." The trial court denied the motion, finding that there was "no indication that there has been a mistranslation of anything material or important in regard to this case." The trial court did, however, substitute Aymat as interpreter and excused Gonzales, because the victim "has expressed a comfort in communicating through this translator [(Aymat)]."

The jury was returned to the courtroom for the commencement of cross-examination of the victim. However, before such could begin, the bailiff delivered a message from the jurors: "Your Honor, all 13 jurors said they could not hear the interpreter [Gonzales]." Thereafter, counsel for Nunez stated, "Your Honor, the jurors have indicated unanimously they could not hear the interpreter, that the direct would be of little to no value and we would ask that the state be required to go back." The trial court agreed. Following the court's ruling, Nunez moved for mistrial based upon "an inference that may be drawn as a result of them [(the State)] having to go back and re-present it." The trial court denied the motion, and the State, again, conducted direct examination of the victim, this time using Aymat as translator. The record shows that the material substance of the victim's testimony was precisely the same in both direct examinations. *Held*:

1. In his first two enumerations of error, Nunez asserts reversible error in the State's use of interpreter Gonzales, because she was allegedly unqualified and unreliable. These contentions present no grounds for reversal.

The issue of Gonzales' qualifications to act as an interpreter became moot when she was replaced by Nunez's own translator, Aymat, and, at Nunez's request, direct examination of the victim was repeated. Further, the substance of the second direct examination was the same as the first, thereby demonstrating that Gonzales' translation to the jury was materially accurate and, thus, "reliable." "Harm as well as error must be affirmatively shown by the record to obtain reversal."[1]

Perhaps in recognition of the above, Nunez attempts to show harm in two ways.[2] First Nunez contends that,

Appellant did prove some harm. Although [the victim] has spent significant time both before the alleged rape and after the alleged rape with appellant, the first version of events interpreted by Gonzales did not explain that. In addition, the extent of their cohabitation was important to show the likelihood that appellant's acts were consensual. Ms. Gonzales failed to translate those matters to show the extent of likely consensual conduct.

The record, however, clearly shows that above information about which Nunez complains came out pursuant to cross-examination questions asked of the victim, not direct examination questions. And Gonzales never translated cross-examination questions and responses. In fact, the complained-of information was not raised in either the first or the second *direct* examination of the victim. Obviously, Gonzales did not "fail to translate" matters that were not raised in that portion of the trial in which she participated.

Next, Nunez contends that he is unable to demonstrate prejudice because the trial court did not permit him to voir dire Gonzales. The record shows, however, that Nunez never requested to voir dire Gonzales. His stated interest was in ascertaining the *victim's* ability to understand Gonzales' questions. The trial court permitted Nunez to voir dire the victim on this issue.[3] Absent a request by Nunez to voir dire Gonzales, the instant contention is factually baseless.

2. Nunez also claims that the second direct examination of the victim improperly "bolstered" the victim's credibility by allowing the

---

[1] (Citation and punctuation omitted.) *Nel v. State*, 252 Ga. App. 761, 763 (2) (b) (557 SE2d 44) (2001).

[2] An additional "harmful error" argument alleging a relationship between Gonzales and the victim was withdrawn by Nunez in his reply brief.

[3] The trial court limited Nunez's questions to the victim in order to prevent the voir dire from becoming a fishing expedition: "And the scope of this investigation is as to the witness's [(victim's)] understanding of the questions and answers she has given, and that is all the scope of this inquiry." No objection was made to this limitation.

jury to hear her direct examination testimony twice.

(a) The State conducted a second direct examination of the victim because counsel for Nunez made a specific request of the trial court: "we would ask that the state be required to go back." The trial court granted such request. "One cannot complain of a trial court's ruling which the party's own trial tactics or conduct procured or aided in causing."[4]

(b) Nunez's objection in the court below was "based upon any inferences that may be drawn as a result of them [(the State)] having to go back and re-present it [(direct examination)]." No objection was made with regard to "improper bolstering" of the victim's testimony. "It is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal."[5]

(c) The undisputed evidence of record is that, during the first direct examination, the jury could not hear Gonzales' translation of the victim's testimony. Even Nunez's counsel characterized the first direct as having "little to no value" because of the inability of the jurors to hear it. Since the jury could not hear the victim's testimony during the first direct, conducting a second direct did not result in the jury hearing the victim's testimony twice so as to "bolster" it.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED DECEMBER 13, 2002.

*Jerry W. Moncus, Todd M. Johnson*, for appellant.
*Kermit N. McManus, District Attorney, John S. Helton, Assistant District Attorney*, for appellee.

---

[4] *Pryer v. State*, 245 Ga. App. 279, 282 (2) (537 SE2d 717) (2000).
[5] (Citations and punctuation omitted.) *Kight v. State*, 242 Ga. App. 13, 18 (3) (528 SE2d 542) (2000).
[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).