### A10A1055. SNIDER v. THE STATE.
(695 SE2d 383)

BLACKBURN, Judge.
Following a jury trial, Michael Snider appeals his conviction on one count of aggravated child molestation[1] and on four counts of

---

[16] *Miller*, supra.

[1] OCGA § 16-6-4 (c).

child molestation,[2] contending that the trial court erred (i) in admitting certain child hearsay statements under OCGA § 24-3-16, (ii) in granting the State's motion to exclude evidence of a prior molestation of one of the victims by another adult, (iii) in denying Snider's motion to exclude evidence of his prior convictions for impeachment purposes, (iv) in admitting evidence of similar transactions, (v) in admitting evidence of a prior consistent statement of a child witness, and (vi) in not charging the jury on prior consistent statements. Discerning no error, we affirm.

Construed in favor of the verdict, *Davis v. State*,[3] the evidence shows that, based on the in-court testimony of the child victims, between April 2004 and February 2005 Snider often placed his mouth on the private parts of ten-to-eleven-year-old male Che. T., repeatedly fondled the private parts of Che. T., had Che. T. seven times fondle Snider's private parts, fondled six-year-old male P. H.'s private parts, and fondled twelve-year-old male Cha. T.'s private parts (P. H. was the cousin of Che. T. and Cha. T., who were brothers). These victims testified that Snider performed these acts when each respective child was startled from sleep while sleeping overnight in Snider's bed in his trailer home near a marina. Snider threatened to kill Che. T. if he ever told anyone of the incidents.

Although the last to experience molestation by Snider, P. H. was the first to disclose his encounter. Immediately after the encounter, he had someone call his parents to come pick him up because he was scared. He told his mother of the molestation by Snider some days thereafter when she inquired as to whether anyone had ever touched him inappropriately. Hearing of their cousin P. H.'s disclosure, Che. T. and Cha. T. told their stepfather of their sexual encounters with Snider. Although P. H. freely repeated this disclosure to the forensic interviewer at the local child advocacy center (explaining that was the reason he had had his parents come pick him up), Che. T. and Cha. T. both changed their respective stories when interviewed at the center, claiming no inappropriate conduct occurred. After repeating to his stepfather his initial disclosure of molestation, Che. T. was then re-interviewed by a trained child forensic interviewer of the sheriff's office, at which time Che. T. told of the molestation. Che. T. stated that he had withheld disclosing the molestation to the child advocacy interviewer because he was afraid Snider would make good on his threat to hurt him. Although also re-interviewed by this same forensic interviewer of the sheriff's office, Cha. T. (a special education student) maintained that no sexual encounter occurred. Nevertheless, as stated

---

[2] OCGA § 16-6-4 (a).

[3] *Davis v. State*, 275 Ga. App. 714, 715 (1) (621 SE2d 818) (2005).

above, all three boys testified at trial to the sexual encounters.

A jury found Snider guilty on all counts, and he was sentenced accordingly. Following the denial of his motion for new trial, Snider appeals the conviction.

1. Snider first claims that the trial court erred in admitting child hearsay under OCGA § 24-3-16 without a hearing and without evidence showing sufficient indicia of reliability. The record belies Snider's contentions.

OCGA § 24-3-16 provides:

> A statement made by a child under the age of 14 years describing any act of sexual contact or physical abuse performed with or on the child by another . . . is admissible in evidence by the testimony of the person or persons to whom made if the child is available to testify in the proceedings and the court finds that the circumstances of the statement provide sufficient indicia of reliability.

The seminal case of *Gregg v. State*[4] held

> that while the court must find that "the circumstances of the statement provide sufficient indicia of reliability," such finding is not a *condition precedent* to the admissibility of the statement; rather, this statutory requirement is met if after both parties have rested, the record contains evidence which would support such a finding.

(Emphasis in original.) Noting that the trial court had broad discretion in the admission of such evidence, *Gregg* went on to list what factors a court may consider in determining the reliability of the statement:

> (1) the atmosphere and circumstances under which the statement *was made* (including the time, the place, and the people present thereat); (2) the spontaneity of the child's statement to the persons present; (3) the child's age; (4) the child's general demeanor; (5) the child's condition (physical or emotional); (6) the presence or absence of threats or promise of benefits; (7) the presence or absence of drugs or alcohol; (8) the child's general credibility; (9) the presence or absence of any coaching by parents or other third parties before or at the time of the child's statement, and the type

---

[4] *Gregg v. State*, 201 Ga. App. 238, 239 (3) (a) (411 SE2d 65) (1991).

of coaching and circumstances surrounding the same; and,
the nature of the child's statement and type of language
used therein; and (10) the consistency between repeated
out-of-court statements by the child.

(Emphasis in original.) Id. at 240 (3) (b).

First, we note that although a pretrial hearing was not required
under the statute (see *Reynolds v. State*[5]), one was indeed held here.
Thus, Snider's first complaint regarding the admission of the child
hearsay fails.

Second, we hold that evidence in the trial transcript supports the
court's findings that the child hearsay statements were sufficiently
reliable. We will discuss each statement (complained of by Snider)
individually below.

(a) *First interviews of Che. T. and Cha. T. at the child advocacy
center.* In their initial interviews at the child advocacy center, both
Che. T. and Cha. T. *denied* that anyone had molested them in any
way. Because this evidence benefitted Snider, his trial counsel
insisted that the trial court admit into evidence and play to the jury
the videotapes of these interviews. Thus, Snider can hardly complain
now that these statements were introduced. See *Evans v. State*[6] ("[i]t
is well established that induced error is impermissible and furnishes
no ground for reversal") (punctuation omitted). Indeed, because of
their beneficial effect on Snider's defense, their admission (if im-
proper) would at most constitute harmless error.

(b) *P. H.'s statements to his mother.* P. H. told his mother that he
was scared and wanted to come home from Snider's residence, and
later explained that Snider had molested him that night by fondling
his private parts. Evidence showed that these two interrelated
statements were supported by sufficient indicia of reliability.

The first statement made the night of the molestation — that
P. H. was scared and wanted to come home — was a spontaneous
statement that was consistent with his later statement to the
interviewer at the child advocacy center and with his testimony at
trial. No evidence showed that any alcohol, coaching, threats, or
promises accompanied or motivated this statement. The trial court
had the opportunity to observe the child's demeanor during the
playing of the videotape of the interview with the forensic inter-
viewer and during his trial testimony. The trial court did not abuse
its broad discretion in finding that sufficient indicia of reliability

---

[5] *Reynolds v. State*, 257 Ga. 725, 726 (2) (363 SE2d 249) (1988).
[6] *Evans v. State*, 300 Ga. App. 180, 181 (684 SE2d 311) (2009).

supported this statement. See *Kight v. State*.[7]

The second statement — that Snider had fondled P. H.'s private parts — was also consistent with the statements P. H. made to the interviewer at the child advocacy center and to the jury at trial. As with the first statement, no evidence showed that any alcohol, coaching, threats, or promises accompanied or motivated this statement, which was made while traveling in a car with his parents to go shopping and in response to a general parental inquiry whether anyone had touched him inappropriately. Once again, the court had the opportunity to observe P. H.'s demeanor at trial and during the playing of the videotape with the forensic interviewer. We discern no abuse of discretion in the admission of this statement either. *Kight*, supra, 242 Ga. App. at 16-17 (1).

(c) *P. H.'s statement to the forensic interviewer at the child advocacy center.* P. H.'s statement to the forensic interviewer at the child advocacy center that Snider had fondled his private parts was made at a neutral site with no evidence of coaching, threats, distress, promises, or alcohol, and was consistent in all respects with his statements to his mother and to the jury about the incident. We can find no abuse of discretion in the trial court's finding that sufficient indicia of reliability supported this statement. *Kight*, supra, 242 Ga. App. at 16-17 (1).

(d) *Subsequent interviews of Che. T. and Cha. T. to the forensic interviewer at the sheriff's office.* Snider's complaints about Che. T.'s and Cha. T.'s subsequent statements made to the forensic interviewer at the sheriff's office are misplaced. First, Cha. T.'s statement confirmed his earlier denial of any molestation and therefore *benefitted* Snider's defense. We can hardly discern any harm in the admission of this statement.

Second, the trial court expressly found that Che. T.'s statement to the sheriff's forensic interviewer *lacked* the indicia of reliability, and the court therefore *refused* to admit the statement under OCGA § 24-3-16. However, the court did find in a pretrial hearing that this statement was a prior consistent statement with Che. T.'s anticipated trial testimony and therefore admitted it provisionally for this purpose alone. Indeed, during trial, because Snider had already put into evidence the videotape of the earlier inconsistent statement made to the interviewer at the child advocacy center, and because Snider had insinuated during Che. T.'s cross-examination that the prosecutor had just before trial influenced his trial testimony, the trial court at the time the videotape was tendered declared definitively that it was being admitted as a prior consistent state-

---

[7] *Kight v. State*, 242 Ga. App. 13, 16-17 (1) (528 SE2d 542) (2000).

ment. Snider did not make any argument that the statement failed to meet the prerequisites for admission as a prior consistent statement.

Snider now claims on appeal that the statement failed to meet the prerequisites for admission as a prior consistent statement. Setting aside that it would appear that the statement met these prerequisites so as to counter Snider's position that the prosecutor had improperly influenced Che. T.'s trial testimony (see *Tuff v. State*;[8] cf. *Duggan v. State*[9]), we hold that Snider's failure to object to the statements on this basis at the trial level waived his right to challenge them on this basis on appeal. See *Nunez v. State*[10] ("[i]t is well settled that a reason urged by enumeration of error on appeal which is different from that urged below will not be considered for the first time on appeal") (punctuation omitted); *Watkins v. State*[11] ("[defendant] did not object to the . . . testimony on this basis at the trial court level and has therefore waived this issue on appeal").

2. In his second enumeration of error, Snider argues that the admission of the child hearsay statements under OCGA § 24-3-16 violated his Sixth Amendment right to confrontation because he was precluded from testing the veracity of the child witness *at the time the statements were originally made*. The Supreme Court of Georgia rejected this very argument in *Reynolds*, supra, 257 Ga. at 726 (3), holding:

> We note that in this case [the child witness] actually testified at trial and was subject to a thorough cross-examination. In this situation defendant was not denied the right of confrontation even though he was unable to confront [the child witness] when the statements were originally made. The right of confrontation is satisfied if the witness testifies at trial and is subject to cross-examination.

Because all three child witnesses testified at trial and were subjected to thorough and sifting cross-examination, we similarly hold that the admission of their prior statements did not violate Snider's right of confrontation. Cf. *Crawford v. Washington*;[12] *California v. Green*.[13]

3. In his third enumeration of error, Snider contends that the trial court erred in granting the State's motion to exclude evidence of an alleged prior molestation of Che. T. by P. H.'s father. Specifically,

---

[8] *Tuff v. State*, 278 Ga. 91, 94 (4) (597 SE2d 328) (2004).

[9] *Duggan v. State*, 285 Ga. 363, 366 (2) (677 SE2d 92) (2009).

[10] *Nunez v. State*, 258 Ga. App. 860, 863 (2) (b) (575 SE2d 735) (2002).

[11] *Watkins v. State*, 253 Ga. App. 382, 386 (5) (559 SE2d 133) (2002).

[12] *Crawford v. Washington*, 541 U. S. 36, 59 (IV), n. 9 (124 SC 1354, 158 LE2d 177) (2004).

[13] *California v. Green*, 399 U. S. 149, 162 (II) (90 SC 1930, 26 LE2d 489) (1970).

Snider wished to introduce evidence that P. H.'s father had shown to Che. T. a pornographic videotape of anal sex between a man and a woman and had told Che. T. that such conduct was appropriate.

It is true that, "[g]enerally, [an] accused may introduce evidence tending to show that another person committed the crime with which he is charged, if a proper foundation is laid, unless the probative value of the evidence is substantially outweighed by actual risk of undue delay, prejudice, or confusion." (Punctuation omitted.) *Bradford v. State*.[14] But such evidence "must be limited to such facts as are inconsistent with [the accused's] own guilt, and to such facts as raise a reasonable inference or presumption as to his own innocence." (Punctuation omitted.) Id. Thus,

> [t]he evidence, to be admissible, must be such proof as directly connects the other person with the corpus delicti, and tends clearly to point out someone besides accused as the guilty person. Evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.

(Punctuation omitted.) Id. See *Holmes v. South Carolina*;[15] *Azizi v. State*.[16] The trial court's determination of such issues "is within the discretion of the trial court." *Dix v. State*.[17]

We discern no abuse of discretion here. The evidence that P. H.'s father showed Che. T. a pornographic videotape of anal sex between a man and a woman (and indicated his approval of such) hardly suggests an inference that he was the man who fondled Che. T.'s private parts, placed his mouth on Che. T.'s private parts, or had Che. T. fondle his private parts. There is simply no logical connection between the acts of P. H.'s father showing a videotape of heterosexual conduct between adults and the direct hands-on same-sex child molestation of Che. T. Indeed, considering that Che. T. indicated consistently that Snider was the man who molested his private parts and that such took place in Snider's residence in Snider's bed, and considering the similar testimony of his relatives as well as the similar transaction evidence of two adult males who both testified that Snider molested them in like fashion in Snider's bed when they were youths, we hold that the trial court did not abuse its discretion in excluding the evidence of P. H.'s father's alleged actions as

---

[14] *Bradford v. State*, 204 Ga. App. 568, 569 (420 SE2d 4) (1992).
[15] *Holmes v. South Carolina*, 547 U. S. 319, 328 (II) (126 SC 1727, 164 LE2d 503) (2006).
[16] *Azizi v. State*, 270 Ga. 709, 714 (6) (512 SE2d 622) (1999).
[17] *Dix v. State*, 246 Ga. App. 338, 341 (3) (540 SE2d 294) (2000).

irrelevant. See *Hughes v. State*.[18]

4. In his fourth enumeration of error, Snider argues that the trial court erred in denying his motion to exclude evidence of Snider's prior convictions for child molestation, which the State had indicated it intended to introduce as impeachment should Snider testify. Snider's argument is misplaced for the simple reason that the court in fact did not rule on the motion to exclude the convictions as impeachment evidence, instead deferring that ruling until such time as the State attempted to introduce them for such purpose. The wisdom of this approach was shown by the fact that Snider chose not to testify, and therefore the State never even tried to introduce the convictions for impeachment purposes. Accordingly, we can discern neither error by the court nor harm to Snider.

5. In his fifth enumeration of error, Snider complains that the trial court erred in admitting evidence of prior similar transactions, in which Snider had molested other young boys in his bed by fondling their private parts. However, although Snider had objected to these similar transactions in a pretrial hearing regarding such, he raised no objection when these other victims testified at trial. And even when the convictions relating to these similar transactions were later tendered at trial, Snider's only objection was that the convictions reiterated what the witnesses had testified to and therefore constituted "continuing hearsay." He did not renew his pretrial objection that the similar transaction evidence was irrelevant, dissimilar, or otherwise inadmissible under the similar transaction rule.

Snider has waived his right to challenge this similar transaction evidence on appeal. As stated in *Johnson v. State*:[19]

> Although [defendant] objected to the similar transaction evidence at a pre-trial hearing conducted pursuant to Uniform Superior Court Rule 31.3 (B), he raised no objections when any of the evidence was elicited during trial, as he was required to do to preserve any objection. The rule requiring a trial objection on similar transaction evidence is firm in Georgia jurisprudence, and we are bound to follow it.

(Citation and punctuation omitted.) See *McClarity v. State*.[20] Therefore, there is nothing for us to review in this regard.

Moreover, we note that Snider was the first to make reference to the similar transaction evidence, which he did during the cross-

---

[18] *Hughes v. State*, 297 Ga. App. 581, 585-586 (4) (677 SE2d 674) (2009).
[19] *Johnson v. State*, 302 Ga. App. 318, 325 (5) (690 SE2d 683) (2010).
[20] *McClarity v. State*, 234 Ga. App. 348, 350 (2) (506 SE2d 392) (1998).

examination of Che. T. (the State's first witness). Snider attempted to use this evidence to show that Che. T. had been told of these prior incidents and that such had influenced his decision to identify Snider as the perpetrator of the molestations upon him; Snider further sought to challenge Che. T.'s credibility by showing that Che. T. stayed at Snider's house overnight even though he knew Snider was a convicted child molester. Where the defendant is the first to elicit testimony regarding the similar transactions at trial, he waives any complaint about the State later presenting such evidence. See *Evans*, supra, 300 Ga. App. at 181 ("[i]t is well established that induced error is impermissible and furnishes no ground for reversal") (punctuation omitted).

6. Snider's final enumeration of error is that the trial court erred in not charging the jury on prior consistent statements. However, Snider "did not request a charge on prior consistent statements. In a criminal case, the trial court is not required to give an unrequested charge as to any collateral matter. The manner in which the jury should consider the testimony of witnesses is a collateral matter." (Footnote omitted.) *Watkins v. State*.[21]

Moreover, we have discouraged trial courts from giving such instructions. "As this Court noted in *Boyt v. State*,[22] such an instruction on prior consistent statements is a truism. Unless otherwise instructed, 'a jury may consider *all* the words it hears as substantive evidence.' " (Footnote omitted; emphasis in original.) *Smith v. State*.[23] Thus, "the better practice is for the trial court not to charge at all on prior consistent statements and leave the matter to the arguments of counsel." (Punctuation omitted.) *Metts v. State*.[24] See generally *Boyt*, supra, 286 Ga. App. at 467 (3) ("[o]ur research has revealed no Georgia or federal decision which holds that a trial judge committed reversible error by failing to give a jury instruction on prior consistent statements") (emphasis omitted).

Snider's citation to the 1994 case of *Harper v. State*[25] is misguided, as that case preceded the 2007 analysis in *Boyt* that "prior consistent statement" instructions were unhelpful and therefore discouraged, and as *Harper* involved a defendant who had specifically requested in writing that the court charge the jury on prior consistent statements.

We discern no error in the court's failure to instruct the jury on prior consistent statements.

---

[21] *Watkins v. State*, 290 Ga. App. 41, 42 (1) (658 SE2d 812) (2008).

[22] *Boyt v. State*, 286 Ga. App. 460, 466 (3) (649 SE2d 589) (2007).

[23] *Smith v. State*, 291 Ga. App. 389, 390-391 (2) (662 SE2d 201) (2008).

[24] *Metts v. State*, 297 Ga. App. 330, 338 (7), n. 7 (677 SE2d 377) (2009).

[25] *Harper v. State*, 213 Ga. App. 505, 506-507 (1) (445 SE2d 548) (1994).

*Judgment affirmed. Barnes, P. J., and Bernes, J., concur.*

DECIDED MAY 12, 2010 — 

David S. Klein, for appellant.

Ashley Wright, District Attorney, Charles R. Sheppard, Madonna M. Little, Assistant District Attorneys, Thurbert E. Baker, Attorney General, for appellee.