A11A0546. HALL v. THE STATE.
(709 SE2d 910)

ANDREWS, Judge.

On appeal from her conviction on three counts of permitting a child to be present during the manufacture of methamphetamine, Patricia Hall argues that the trial court erred when it barred her from presenting evidence and argument concerning the guilt of another party and when it denied her motion to reopen evidence on the same subject. We find no error and affirm.

"On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, with the defendant no longer enjoying a presumption of innocence." *Reese v. State*, 270 Ga. App. 522, 523 (607 SE2d 165) (2004). We neither weigh the evidence nor judge the credibility of witnesses, but determine only whether, after viewing the evidence in the light most favorable to the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the record shows that on the evening of October 4, 2007, Hall County police officers executed a search warrant for

methamphetamine and Donald Jason Passmore, Hall's husband, at a trailer in Gainesville. The trailer was rented by Kristi Gooch and her boyfriend Brandon Witherow, who lived there with their daughter. Having been put out of their previous home, Passmore and Hall had moved into the same trailer with their two children. When the three officers entered the trailer, they found Gooch and Hall in the living room with Gooch's daughter and Hall's children. The officers then went into the far right bedroom and found Passmore lying on a bed. As the officers handcuffed Passmore, one of them noticed a bowl full of matchbook striker plates on a box. Another officer opened the unlocked door of the middle bedroom and saw items including a hot plate, chemicals, and matches. All the occupants of the trailer were then ordered to evacuate.

As the officers gathered everyone to leave, Passmore said that the equipment didn't belong to him but that he could tell police whose it was. Passmore also told the officers that a man who lived "down the road" had brought the meth lab equipment to the trailer and that he knew "where another one is, a lab." On hearing this latter statement, Hall nodded her head, and both women also said that this other lab was in "a trailer." The officers assumed that this last term referred to another mobile home. At some point during the search, however, Witherow drove into the subdivision in a vehicle with Roger and Telina Moore and was later seen driving the same vehicle pulling a small trailer. The officers later tried to locate this vehicle and trailer but could not. Both of the Moores had prior convictions related to methamphetamine manufacture and distribution.

After the evacuation was completed, officers recovered the match striker plates, which contained the red phosphorus commonly used to manufacture methamphetamine, as well as four boxes of Sudafed PE, which contained neither ephedrine nor pseudoephedrine, from Hall and Passmore's bedroom. An officer also recovered a digital scale from the top drawer of Hall's dresser. Elsewhere in the trailer, police recovered other materials including stove fuel, muriatic acid, hydrogen peroxide, a hot plate, rubber gloves stained with red phosphorus, empty packs of Sudafed containing ephedrine, jars containing dissolved ephedrine or methamphetamine residue, and a spoon with methamphetamine residue on it.

Hall was charged with one count of trafficking in methamphetamine by manufacturing less than 200 grams of the drug (OCGA § 16-13-31 (f) (1)), three counts of permitting a child to be present during the manufacture of methamphetamine (OCGA § 16-5-73 (b)), one count of possession of methamphetamine (OCGA § 16-13-30 (a)), and one count of possession of altered ephedrine or pseudoephedrine (OCGA § 16-13-30.3 (d)).

At trial, Hall proffered evidence concerning Witherow and the Moores in support of her theory that they, rather than she or her husband, were running the lab, including that both Moores had previously visited the trailer and had left fingerprints there, including on the digital scales. The trial court ruled that because the spoon with meth residue had been found on top of a check stub with Witherow's name on it in the bedroom he shared with Gooch, Hall could argue that Witherow was an "other party" to the crime, but that there was insufficient evidence, beyond the Moores' mere presence in the area, to justify further evidence or argument concerning them. Hall later renewed her motion as to the Moores in light of the officers' testimony about Passmore's statements at the scene, but the trial court again denied the motion.

The jury acquitted Hall of trafficking in and possession of methamphetamine as well as possession of altered ephedrine, but found her guilty on all three counts of permitting a child to be present during the manufacture of methamphetamine. Hall was convicted and sentenced to fifteen years with three to serve. Her motion for new trial was denied.

1. First adopted into law in 2004 (see Ga. L. 2004, p. 57, § 4), OCGA § 16-5-73 provides in part:

> (b) (1) *Any person* who intentionally causes or permits a child to be present where *any person* is manufacturing methamphetamine *or possessing a chemical substance with the intent to manufacture* methamphetamine shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than two nor more than 15 years.

(Emphasis supplied.) Subsection (a) (1) of the same statute defines "[c]hemical substance" as "anhydrous ammonia, . . . ephedrine, pseudoephedrine, or phenylpropanolamine, . . . or *any other chemical used in the manufacture of methamphetamine.*" Subsection (a) (3) defines "[i]ntent to manufacture" as

> mean[ing] but . . . not limited to the intent to manufacture methamphetamine, which may be demonstrated by a chemical substance's usage, quantity, or manner or method of storage, including but not limited to storing it in proximity to another chemical substance or equipment used to manufacture methamphetamine.

Although Hall does not challenge the sufficiency of the evidence against her, we note that OCGA § 16-5-73 has not previously been

construed by a Georgia court. Accordingly, we hold that the evidence that Hall and her children resided in the trailer and that a bowl of striker plates containing the red phosphorus commonly used to manufacture the drug was found in the bedroom she shared with Passmore was sufficient to sustain her conviction for permitting a child to be present at the scene of methamphetamine manufacture. See, e.g., *Wilson v. State*, 231 Ga. App. 525, 526-527 (1) (499 SE2d 911) (1998) (evidence of other occupants' access to contraband was insufficient as a matter of law to rebut the presumption that defendant who also occupied apartment was in possession of the contraband).

2. Hall argues that the trial court erred when it excluded further evidence and argument concerning the Moores as other parties to the crime. We disagree.

As Hall concedes, we review a trial court's decision as to the admissibility of "other party" evidence only for an abuse of discretion. *Snider v. State*, 304 Ga. App. 64, 70 (3) (695 SE2d 383) (2010). Moreover, although a defendant "is entitled to introduce relevant and admissible testimony tending to show that another person committed the crime for which the defendant is tried," *Scott v. State*, 281 Ga. 373, 377 (3) (637 SE2d 652) (2006), "the proffered evidence must raise a reasonable inference of the defendant's innocence, and must directly connect the other person with the corpus delicti, or show that the other person has recently committed a crime of the same or similar nature." Id. "[A] reasonable inference of the defendant's innocence [is] raised by evidence that render[s] the desired inference more probable than the inference would be without the evidence." *Oree v. State*, 280 Ga. 588, 593 (5) (630 SE2d 390) (2006).

Here, Hall subjected the officers to thorough cross-examination concerning their failure to pursue the vehicle driven by Witherow, and the trial court authorized Hall to present evidence and argument that Witherow was indeed the party responsible for the manufacture. There is no sign in the record before us that the jury had any difficulty distinguishing between those parties involved in manufacturing the drug and those involved only in the maintenance of children at the scene. On the contrary, the jury found Passmore guilty of attempt to commit trafficking in as well as possession of the drug, whereas it acquitted Hall and Gooch of both these charges. See *Dills v. State*, 281 Ga. App. 484, 486 (636 SE2d 166) (2006) (noting absence of evidence that jury was confused when it acquitted one defendant but found another defendant guilty of the same charge).

More important, even though the Moores both had recent convictions for crimes involving methamphetamine, and even assuming that this relieved Hall of establishing any link between them

and the corpus delicti, the presence of Mrs. Moore's fingerprints on the digital scales found in Hall's bedroom did not tend to make any "more probable" an inference that the Moores rather than Hall were responsible for any of the crimes for which Hall was tried. Even less did this evidence have any bearing on the crime of which Hall was convicted — that is, permitting children in a place where methamphetamine was being manufactured. Thus the trial court did not abuse its discretion when it barred Hall from further evidence and argument concerning her theory that the Moores rather than she were responsible for those crimes. *Snider*, 304 Ga. App. at 70-71 (3) (finding no abuse of discretion in excluding evidence of another party's showing the child molestation victim a pornographic video when there was "no logical connection" between that act and the charged crime).

3. Hall also argues that the trial court abused its discretion when it denied her motion to reopen evidence. Again, we disagree.

The record shows that on the day before the close of evidence, counsel discovered that an officer had failed to write down the name of the methamphetamine manufacturer given to him by Passmore at the scene, that Passmore had taken a drive with another officer to show him the location of the lab, and that an informant had tipped off police that the manufactured methamphetamine was supposed to be delivered to the trailer where Passmore and Hall lived. On the morning after the close of evidence, Hall moved to reopen evidence and, in the alternative, for a mistrial. After noting that counsel had failed to bring the matter to its attention before the close of evidence, the trial court held a proffer hearing, including examination of witnesses by both sides, and then denied both motions.

Here, counsel knew of the evidence at issue before the close of its case and did not bring the matter to the attention of the trial court. It also appears highly improbable that the proffered evidence would have led to a different verdict. Under these circumstances, we conclude that the trial court did not abuse its discretion when it denied the motion. See *Carruth v. State*, 267 Ga. 221, 221-222 (476 SE2d 739) (1996).

*Judgment affirmed. Phipps, P. J., and McFadden, J., concur.*

DECIDED APRIL 11, 2011.

*Mark A. Begnaud*, for appellant.
*Lee Darragh, District Attorney, Lindsay H. Burton, Assistant District Attorney*, for appellee.