**THIRD DIVISION**
**MILLER, P. J.,**
**MCFADDEN, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 16, 2017**

# In the Court of Appeals of Georgia

A16A1625. AKINTOYE v. THE STATE.

MILLER, Presiding Judge.

Following a jury trial, Joseph Akintoye was convicted of two counts of theft by taking (OCGA § 16-8-2), two counts of theft by deception (OCGA § 16-8-3), two counts of exploitation of an elder person (OCGA § 30-5-8 (2012)), one count of violating Georgia's Racketeer Influenced and Corrupt Organizations Act (RICO) (OCGA § 16-14-4 (2012)), and three counts of money laundering (OCGA § 7-1-915).[1] Akintoye appeals from the denial of his motion for new trial, arguing that the evidence was insufficient to support his convictions. Akintoye also contends that the trial court erred in allowing improper hearsay testimony, allowing a text message

---

[1] Akintoye was also convicted of an additional theft by taking charge, three additional money laundering charges and an additional RICO charge. The trial court merged these additional charges for sentencing purposes.

exhibit to go with the jury during deliberations, and allowing a witness to testify as an expert with regard to evidence of other bad acts. Finally, Akintoye argues that his trial counsel was constitutionally deficient. For the reasons that follow, we affirm.

Viewed in the light most favorable to his convictions,[2] the evidence shows that Akintoye resided in Jacksonville, Florida, where he ran an international car sales business and he conspired with Lizabeth Crawford ("Crawford") to scam money from the elderly.[3] Crawford would receive wired money into her bank account, from Akintoye's victims and other sources, then withdraw and deposit a similar or slightly lesser amount into Akintoye's bank account according to his instructions.[4] Over a period of eighteen months, Crawford received approximately $200,000, which she then withdrew as cash or wired out of her account.

On several occasions, money was withdrawn from Crawford's account and deposited to Akintoye's account very soon thereafter. Each time Crawford transferred

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[3] Crawford also worked with others to receive and then resend funds.

[4] Crawford, who testified for the State at Akintoye's trial, pled guilty to two counts of Theft by Deception (OCGA § 16-8-3), involving two of the three victims in this case.

2

funds into Akintoye's account, she retained approximately $650 to $1,500 of the original funds.

In this case, Akintoye was charged with crimes involving three victims, D. R., J. R. and J. M. With regard to these victims, the evidence pertinently showed:

*D. R.*

In 2012, D. R., a 74-year-old widow who lives in New York, began corresponding with someone through Match.com. This individual misled D. R. into believing that he was an American father and businessman, who was having financial difficulty in Malaysia and was trying to return to his children in New York City. On February 14 and 19, 2013, D. R. was directed to wire $35,000 into Crawford's bank account under the auspice that this man needed this money for his hotel and if he did not pay the money he would be arrested. D. R. sent two wire transfers to Crawford's account – one for $25,000 and one for $10,000.

Crawford withdrew the first payment of $25,000 and deposited it into another account, and most of that money was then wired to Nigerian and Malaysian banks. With regard to the $10,000 payment, all but $100 was withdrawn and deposited into another of Crawford's accounts, from which it was wired to the same foreign bank accounts.

*J. M.*

J. M. died about one month prior to trial; therefore, his grandson testified about the scam. The grandson testified that, on April 18, 2013, 91-year-old J. M. received a phone call at his home from a caller who identified himself as J. M.'s grandson. The caller told J. M. that he was in prison and needed J. M. to wire him money to secure his release. At trial, the grandson testified that J. M. immediately went to Wells Fargo, as instructed by the caller, and wired $6,250 to Crawford's bank account. Later that evening, J. M. spoke to the grandson and was "very surprised" when he learned that the grandson had neither been in prison, nor spoken to him earlier that day. When the embarrassed, confused, and "distraught" J. M. learned that the earlier caller was not his grandson, they promptly notified Wells Fargo seeking to stop the transfer.

That same day, Crawford went to a Cobb County Wells Fargo branch and withdrew $6,175 of the funds J. M. had wired, and Crawford then deposited $5,555 into Akintoye's account. Akintoye then texted Crawford asking, "Have you sent the money yet?" The withdrawal and deposit slips were later found in Crawford's possession, and the $5,555 deposit appeared in Akintoye's bank account records.

*J. R.*

4

On April 22, 2013, 82-year-old J. R. received a phone call at her New Jersey home from a caller who identified himself as her grandson. The caller told J. R. that he had a cold and would not sound like himself, and said he was in jail and needed bail money. The caller informed J. R. that a deputy needed to speak with her. J. R. then spoke to a man who said he was the deputy, and who told her that her grandson needed $6,500 to secure his release. Based on the caller's instructions, J. R. went to Wells Fargo and deposited $6,500 into Crawford's account.

That same day, Crawford received a text message from Akintoye instructing her to check her Wells Fargo account for a "6 K five deposit." Meanwhile, J. R. spoke with her actual grandson and learned that the prior phone call had been a scam, so she promptly notified Wells Fargo and the police. Wells Fargo's video surveillance system recorded Crawford trying to withdraw J. R.'s funds from a Cobb County branch.

Following his trial, Akintoye was convicted of two counts of theft by taking, based on D. R.'s $25,000 and $10,000 transfers; two counts of theft by deception based on the $6,250 wire transfer from J. M. and the $6,500 wire transfer from J. R.; two counts of exploitation of an elder person based the funds taken from 91-year-old

J. M. and 82-year-old J. R.; one count of RICO; and three counts of money laundering.[5] This appeal ensued.

1. Akintoye contends that the evidence was insufficient to support his convictions. We disagree.

As an initial matter, we note that each count in Akintoye's indictment included language stating that he committed the crimes as a co-conspirator and party to the crime.

> A person who does not directly commit a crime may nevertheless be convicted as a party to that crime upon proof that he or she intentionally aided or abetted the commission of the crime, or intentionally advised, encouraged, hired, counseled, or procured another to commit the crime. All of the participants in a plan to [commit a crime] are criminally responsible for the acts of each, committed in the execution of the plan, and which may be said to be a probable consequence of the unlawful design, even though the particular act may not have actually been a part of the plan.

(Citations omitted.) *Cisneros v. State*, 299 Ga. 841, 846-847 (2) (792 SE2d 326) (2016). With regard to co-conspirators,

---

[5] As set forth above, the trial court merged Akintoye's remaining convictions. .

6

[t]he question of the existence of a conspiracy is ultimately for the jury to determine. The existence of a common design or purpose between two or more persons to commit an unlawful act may be shown by direct or circumstantial evidence. It may be shown by conduct as well as by direct proof or express agreement, by inference as well as deduction from conduct which shows common design on the part of persons charged to act together for the accomplishment of the unlawful purpose.

(Citations and punctuation omitted.) *Brown v. State*, 177 Ga. App. 284, 295 (9) (339 SE2d 332) (1985). "It is well settled that when individuals associate themselves in an unlawful enterprise, any act done in pursuance of the conspiracy by one or more of the conspirators is in legal contemplation the act of all." (Citation and punctuation omitted.) Id. Moreover,

[t]he type of agreement necessary to form a conspiracy is not the meeting of the minds necessary to form a contract and may be a mere tacit understanding between two or more people that they will pursue a particular criminal objective.

(Citation and punctuation omitted.) *Kilgore v. State*, 251 Ga. 291, 299 (3) (c) (305 SE2d 82) (1983).

a. Theft by Taking

"A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated." OCGA § 16-8-2. The evidence as set forth was sufficient to support Akintoye's convictions as a co-conspirator and party to the crimes of theft by taking for unlawfully taking $25,000 from D. R. on or about February 14, 2013, and taking $10,000 from D. R. on or about February 19, 2013. See *Williams v. State*, 297 Ga. App. 150, 151 (1) (676 SE2d 805) (2009) (affirming defendant's theft by taking convictions based on evidence that defendant participated in scheme to transfer victim's cash into a third-party account and then withdrew the cash); *Cisneros*, supra, 299 Ga. at 847 (jury was authorized to convict defendant as a co-conspirator to sexual battery).[6]

b. Theft by Deception

"A person commits the offense of theft by deception when he obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property." OCGA § 16-8-3 (a). Here, the evidence as set forth above was

_____

[6] Although Crawford denied Akintoye's role in this scam, he was charged as a co-conspirator in this case and the jury was authorized to find that he conspired with Crawford to scam his elderly victims. *Brown*, supra, 177 Ga. App. at 295 (9).

8

sufficient to sustain Akintoye's convictions as a party to the crimes of theft by deception for taking $6,250 from J. M. and $6,500 from J. R. by deceitful means with the intention of depriving the victims of their property. See e.g. *Harris v. State*, 324 Ga. App. 411, 414 (1) (c) (750 SE2d 721) (2013) (evidence supported defendant's conviction for theft by deception where he deceived tenants into paying rent where he lacked authority to rent premises).

c. Exploitation of an Elder Person

Exploitation is the illegal or improper use of an elder person's resources for profit or advantage. OCGA § 30-5-8; see also *Marks v. State*, 280 Ga. 70, 72 (1) (a) (623 SE2d 504) (2005). Here, the evidence showed that Akintoye deceived 91-year-old J. M. and 74-year-old D. R. into wiring money to Crawford's account. Specifically, Akintoye falsely convinced J. M. that J. M.'s grandson needed bail money and he falsely convinced D. R. that he was in financial difficulty in Malaysia and was trying to return to his children in the United States. This evidence was sufficient for the jury find Akintoye guilty of two counts of exploitation of an elder person. See *Marks*, supra, 280 Ga. at 72 (1) (a) (defendant's use of elder person's credit card to wire more than $5,000 by Western Union to defendant's relative supported his conviction for elder abuse).

d. RICO

Georgia's RICO statute, OCGA § 16-14-4 (a) (2012) provides: "It is unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money." Racketeering activity includes the commission of theft by taking and theft by deception. See OCGA § 16-14-3 (5) (A) (xii). Here, Akintoye's RICO conviction was predicated on his commission of theft by receiving and, because the evidence was sufficient to sustain his convictions for these predicate acts, the evidence was also sufficient to sustain Akintoye's RICO conviction. *Kilby v. State*, 335 Ga. App. 238, 242 (1) (a) (780 SE2d 411) (2015).

e. Money Laundering in Violation of OCGA § 7-1-915

Neither this Court, nor the Supreme Court of Georgia, has addressed the sufficiency of the evidence necessary to support a conviction for money laundering under OCGA § 7-1-915; therefore, this is an issue of first impression. Accordingly, we look to the plain language of the statute and, under the rules of statutory construction, we presume that the General Assembly means what it says and says what it means. *Williams v. State*, 299 Ga. 632, 633 (791 SE2d 55) (2016).

10

To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would.

(Citation omitted.) Id.

With regard to the specific language in Akintoye's indictment, each of the money laundering counts charged that he:

did conduct and attempt to conduct a currency transaction, knowing that [monies] involved in the transaction represented proceeds of some form of unlawful activity, and the transaction did in fact involve the proceeds of specified unlawful activity[.]

Moreover, in two of the money laundering counts, the State charged that Akintoye caused the specified victim

to wire money into the Wells Fargo account of Lizabeth Crawford. . .,*whereupon the money was withdrawn and sent to a different individual*, and these transactions, both the deposits and withdrawals, involved proceeds of theft in an amount greater than $1,500.00 and acts constituting a pattern of racketeering activity[.] (emphasis supplied).

The third count charged that Akintoye caused the specified victim

to wire money into the Wells Fargo account of Lizabeth Crawford. . .,whereupon [Akintoye] *attempted to withdraw the money for purposes*

11

*of sending to another individual*, and these transactions, both the deposits and *attempted withdrawal*, involved proceeds of theft in an amount greater than $1,500.00 and acts constituting a pattern of racketeering activity[.] (emphasis supplied).

As is pertinent to this appeal, the plain language of OCGA § 7-1-915 provides that a person commits the offense of money laundering when that person:

> knowing that the [monies] involved in a currency transaction represent the proceeds of some form of unlawful activity, conducts or attempts to conduct such a transaction which in fact involves the proceeds of specified unlawful activity: . . .[w]ith the intent to promote the carrying on of specified unlawful activity[.]

OCGA § 7-1-915 (c).

Accordingly, Akintoye's indictment created four elements that the State had to prove: (1) Knowledge that the funds involved in a currency transaction represented the proceeds of unlawful activity; (2) Conducting or attempting to conduct a transaction which involves the proceeds of the specified unlawful activity; (3) Using the funds or proceeds from the specified unlawful activity; and (4) Acting with the intent to promote[7] the carrying on of the specified unlawful activity. In this case, the

_____

[7] Webster's Dictionary pertinently defines the transitive verb "promote" as follows: "to advance, to contribute to the growth of or to help bring (as an enterprise)

12

specific unlawful activity was the deposit and withdrawal, or the attempted withdrawal, of more than $1,500 in funds obtained through theft or deception from D. R., J. M., and J. R.

Here, the evidence met the first two elements – knowingly conducting a transaction involving the proceeds of the specified unlawful activity – because the jury was authorized to find that Akintoye was part of a conspiracy which knowingly deceived D. R., J. M. and J. R. into believing that they had to wire funds into Crawford's accounts which resulted in the victims effectuating those wire transfers.

The evidence also met the third and fourth elements – using the funds from the specified unlawful activity with the intent to promote the carrying on of that activity. The evidence showed that Akintoye intentionally had Crawford withdraw or attempt to withdraw and then deposit or attempt to deposit the funds which were obtained through Akintoye's and Crawford's conspiracy to scam the victims, into accounts which Akintoye controlled.[8] Moreover, each of these actions promoted Akintoye's illegal activities of scamming the elderly including his pattern of racketeering.

into being." See https://www.merriam-webster.com/dictionary/promote.

[8] With regard to the third victim, J. R., the evidence showed that Akintoye intentionally had Crawford attempt to withdraw the funds for the purpose of sending the funds to another individual.

13

Consequently, the evidence was sufficient to support Akintoye's convictions for three counts of money laundering.[9]

2. Akintoye contends that the trial court violated his Sixth Amendment right to confrontation by allowing improper hearsay evidence concerning J. M. We discern no error.

"The [C]onfrontation [C]lause imposes an absolute bar to admitting out-of-court statements in evidence when they are testimonial in nature, and when the defendant does not have an opportunity to cross-examine the declarant." (Citations and punctuation omitted.) *Jackson v. State*, 291 Ga. 22, 24 (2) (727 SE2d 106) (2012); see also *Crawford v. Washington*, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004).

At issue is the trial court's admission of testimony by J. M.'s grandson. Pretermitting whether Akintoye waived this issue, J. M.'s statements to his grandson were not testimonial in nature and therefore did not implicate the Sixth Amendment. *Wilson v. State*, 295 Ga. 84, 86 (2) n.4 (757 SE2d 825) (2014) ("[A] conversation

---

[9] Because the evidence supported Akintoye's convictions, the trial court did not err in denying Akintoye's motion for a directed verdict. See *Stratacos v. State*, 293 Ga. 401, 412 (4) (748 SE2d 828) (2013) (this Court reviews the denial of a directed verdict under the same standard used in evaluating the sufficiency of the evidence).

14

between family members with no expectation that it would be used at a criminal trial was clearly not testimonial and, therefore, did not implicate the Sixth Amendment.") (citations omitted).

3. Akintoye also contends that the trial court erred in admitting J. M.'s grandson's testimony on the ground that it constituted inadmissible hearsay. We do not agree.

a. Excited Utterance

J. M.'s statements to his grandson were admissible under the excited utterances exception to Georgia's hearsay rule,[10] which defines an excited utterance as: "[a] statement relating to a startling event made while the declarant was under the stress of excitement caused by the event or condition." OCGA § 24-8-803 (2). In determining whether statements are made under the stress of the exciting event, this Court may consider the time lapse between the exciting evidence and whether the declarant made the statement spontaneously and in the absence of prompting. See Ronald L. Carlson & Michael Scott Carlson, Carlson on Evidence, p. 582 (4th ed. 2016).

---

[10] Because Akintoye was tried after January 1, 2013, Georgia's new Evidence Code was in effect and applicable to his case.

15

[W]hile the declarant must still be under the stress or excitement that the startling event caused, the excited utterance need not be made contemporaneously to the startling event. It is the totality of the circumstances, not simply the length of time that has passed between the event and the statement, that determines whether a hearsay statement was an excited utterance.

*Robbins v. State*, __ Ga. __, *5 (2) (Case No. S16A1342, decided Oct. 31, 2016). Moreover, "[t]estimony that the declarant appeared nervous and upset, combined with a reasonable basis for emotional upset, will usually suffice for admission under the excited utterance exception." (Citation and punctuation omitted.) *Daniel v. State*, 285 Ga. 406, 410 (6) (677 SE2d 120) (2009) (reviewing admissibility of an excited utterance under Georgia's Old Evidence Code).

Here, the evidence shows that J. M. was 91-years-old; he made the statements in question to his grandson immediately after learning that he had been scammed into wiring more than $6,000 by a man who falsely posed as his grandson; and when J. M. made the statements, he was confused and very distraught. Under the totality of the circumstances, these statements were made under the stress of excitement caused by a startling event and the statements related to the startling event. See *Daniel*, supra, 285 Ga. at 410-411 (6). Consequently, J. M.'s statements were admissible under the

16

excited utterance exception to the hearsay rule. See *Robbins*, supra, __ Ga. at *6 (statement victim made while under stress following a beating was admissible as an excited utterance); *Wilson*, supra, 295 Ga. at 87 (statements made while declarant was upset and emotional due to an attack on his stepson were admissible as excited utterances).

b. Residual Exception

The residual exception to the hearsay rule, which is now set forth in OCGA § 24-8-807 provides:

[a] statement not specifically covered by any law but having equivalent circumstantial guarantees of trustworthiness shall not be excluded by the hearsay rule, if the court determines that: (1) The statement is offered as evidence of a material fact; (2) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (3) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

There are six requirements for the admissibility of evidence under the residual hearsay exception:

(1) The hearsay declarant is unavailable as a witness; (2) The statement is evidence of a material fact; (3) No comparable evidence is available to the proponent through reasonable efforts; (4) The statement shows

17

circumstantial guarantees of trustworthiness; (5) The proponent provides pre-trial notice of intent to offer the statement under this exception; and, (6) The general purposes of the rules of evidence and the interests of justice will best be served by admission of the statement into evidence.

Paul S. Milich, Georgia Rules of Evidence, § 19:32 (October 2016).

First, J. M. died prior to trial and, therefore, he was clearly unavailable to testify as a witness. Second, his statements to his grandson provided evidence of a material fact – that he wired money under false pretense. Third, the circumstances provided sufficient guarantees of trustworthiness, given the J. M.'s close relationship with his grandson, the absence of any indication that J. M. had a reason to be untruthful, and the similarity between what was told to J. M. and to J. R. Fourth, no other comparable evidence that J. M.'s wire transfer was induced by fraud. Fifth, the State gave pretrial notice of its intent to offer J. M's statements. Sixth, the general purposes of the evidence rules and the interests of justice were best served by admission of J. M's statements because otherwise the State could not prosecute the crime against J. M.

Moreover, the evidence of J. M.'s statements was more probative that any other evidence because the State had no other evidence showing why J. M. wired the money into Crawford's account. Consequently, the grandson's testimony regarding

J. M.'s statements was admissible under the residual exception to the hearsay rule. See OCGA § 24-8-807; *Williams v. State*, 299 Ga. 209, 212-213 (2) (787 SE2d 187) (2016) (victim's statement to his cousin was admissible under residual exception to old hearsay rule, because victim was close to his cousin, victim had no apparent motive to fabricate statement, statement was relevant to material fact and statement was the only evidence providing a necessary link in the case).

4. Akintoye contends that the trial court erred in allowing a text message exhibit to go back to the jury room during deliberations in violation of the continuing witness rule.[11]

Without citing to the record, Akintoye contends that the trial court should not have allowed the exhibit containing Crawford's text messages to go back to the jury room. Akintoye did not raise a continuing witness objection, either when the exhibit was admitted or when it was included in the exhibits sent to the jury room. Consequently, Akintoye has not preserved this argument for appeal. See *Zellars v.*

---

[11] Documents subject to Georgia's continuing witness rule include: "affidavits, depositions, written confessions, statements, dying declarations, or other instruments of evidence whose sole value depends upon the credibility of the maker." (Citations omitted.) *McBurrows v. State*, 325 Ga. App. 303, 310-311 (4) (750 SE2d 436) (2013).

*State*, 278 Ga. 481, 482-483 (2) (604 SE2d 147) (2004); *Flournoy v. State*, 266 Ga. 618, 618-619 (2) (469 SE2d 195) (1996).

5. Akintoye contends that the trial court erred in allowing the State's forensic accounting and fraud expert to testify about extrinsic acts evidence under OCGA § 24-4-404 (b) ("Rule 404 (b)") relating to Akintoye's bank account records. We disagree.

a. Akintoye first contends that the trial court erred in failing to rule on the State's tender of the expert, however, Akintoye specifically stated that he had no objection when the State tendered the expert.[12] Accordingly, this argument presents nothing for us to review.

b. Akintoye's contention that the trial court erroneously allowed the expert to testify about extrinsic acts is equally unavailing, because the State did not tender Rule 404 (b) evidence through the testimony of its forensic expert. Rather, the expert testified that he reviewed Akintoye and Crawford's bank accounts for evidence of money laundering and he found that the accounts had unusual transactions, such as large amounts of money going in via cash deposits or electronic transfers and nearly

---

[12] The record shows that the expert was a certified fraud examiner and he had worked on more than 100 cases related to forensic accounting.

20

the same amount being withdraw as cash within two to three days. Although the expert also testified about Akintoye's car-sales business, tax issues, and offshore bank accounts, he did so only after Akintoye opened the door to that evidence on cross-examination.

Upon consideration, we find that this evidence was admissible as intrinsic evidence related to the charged offenses. See *Baughns v. State*, 335 Ga. App. 600, 602-603 (1) (782 SE2d 494) (2016). Evidence is intrinsic if it is necessary to complete the story or is inextricably intertwined with the charged offense. *Satterfield v. State*, 339 Ga. App. 15, 19 (1) (a) (792 SE2d 451) (2016). Moreover, intrinsic evidence is not subject to Rule 404 (b)'s limitations. *Baughns*, supra, 335 Ga. App. at 602 (1); see also *United States v. Ford*, 784 F3d 1386, 1393 (II) (C) (11th Cir. 2015) (evidence of uncharged conduct that is necessary to complete the story of the crimes or is inextricably intertwined with the charged offenses falls outside of Rule 404 (b)). Here, all of the expert's testimony that Akintoye challenges was intrinsic evidence, which was inextricably intertwined with proving the charged offenses and was necessary to complete the story of Akintoye's pattern of criminal activity. Consequently, the trial court did not err in allowing the expert's testimony.

6. Finally, Akintoye contends that his defense counsel was constitutionally deficient for failing to preserve the record of jury selection.[13] We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. [See] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the Strickland test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

---

[13] Without citing to the record or any authority, Akintoye also contends that trial counsel was deficient for failing to object to the trial court's expert jury instruction and the State's closing reference to the forensic expert. Each of these arguments is based on his contention that no expert testified because the trial court failed to rule on the State's tender of its forensic expert. Although trial counsel objected to the jury instruction and closing argument, he did not object at trial to the expert's qualification, and Akintoye does not argue on appeal that his trial counsel was deficient for failing to object to the State's tender of its expert. Accordingly, Akintoye has not shown error in this regard.

(Citation and punctuation omitted.) *Davenport v. State*, 316 Ga. App. 234, 239 (3) (729 SE2d 442) (2012).

Here, trial counsel testified at the motion for new trial hearing that he did not recall any issues or improprieties during jury selection and that the State asked no improper questions. "[A] general unspecified hope of reversible error during voir dire does not win a new trial on the ground a record should have been made so as to accommodate a search for error now buried in unrecorded history." (Citation omitted.) *Williams v. State*, 277 Ga. 853, 859 (6) (e) (596 SE2d 597) (2004). Accordingly, Akintoye has not met his burden of showing that his trial counsel was constitutionally deficient, and we therefore affirm his convictions.

*Judgment affirmed. McFadden, P. J., concurs. McMillian, J., concurs in judgment only.*

A16A1625. AKINTOYE v. THE STATE.

McMILLIAN, Judge, concurring in judgment only.

While I concur with the result reached by the majority in this case, I do not agree with all that is said. Accordingly, I concur in the judgment only, and as a result, the majority's opinion is not binding precedent. See Court of Appeals Rule 33 (a).