**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**November 2, 2017**

# In the Court of Appeals of Georgia

A17A0848. WHALEY v. THE STATE.

RICKMAN, Judge.

Following a jury trial, Robert Whaley was convicted on one count of Violation of Georgia's Racketeer Influenced and Corrupt Organizations Act ("RICO") for acquiring money and property through a pattern of racketeering activity in violation of OCGA § 16-14-4 (a). Whaley contends that the evidence was insufficient to support his conviction; the RICO prosecution was time barred; and the trial court erred in allowing the State to introduce extrinsic act evidence, and his trial counsel rendered ineffective assistance by failing to make a proper objection to that evidence. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to support the jury's verdict, and the defendant no longer enjoys a presumption of innocence. We do not weigh the evidence or

judge the credibility of the witnesses, but determine only whether the evidence authorized the jury to find the defendant guilty of the crimes beyond a reasonable doubt in accordance with the standard set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

*Laster v. State*, 340 Ga. App. 96, 97 (796 SE2d 484) (2017).

So construed, the evidence adduced at trial showed that throughout most of the time period relevant to this case, Whaley had a romantic relationship with and/or was engaged to marry Sharron Rice, with whom he also lived for about a year. From approximately May 2005 through July 2012, Rice was employed as accounts payable manager and eventually assistant comptroller for D. E. L. Development Corporation ("DEL"). In that capacity, Rice was responsible for processing all of DEL's accounts payable and issuing checks to DEL's various vendors. At no time did Rice have the authority to sign checks on behalf of DEL.

On a Friday, August 3, 2012, the President of DEL noticed certain inconsistencies during his monthly review of DEL's financial statements. After questioning his employees and being uncomfortable with Rice's demeanor, he ordered that an audit be conducted. The following Monday morning, he entered the

office to discover that Rice had resigned, leaving him a resignation letter and her keys.

The subsequent audit and resulting investigation revealed that over the course of Rice's employment at DEL and during her relationship with Whaley, Rice created in excess of 841 false account payable entries within DEL's accounting software and thereby stole over $800,000 from DEL by writing unauthorized checks to herself and to the personal creditors of herself and Whaley.[1] During that time, Whaley and Rice also vacationed together to such places as Alaska, Jamaica, San Francisco and New York City.

Rice and Whaley were both arrested and charged with three separate counts alleging violations of OCGA § 16-14-4 (a) of the RICO Act.[2] Rice pled guilty to the charges. During Whaley's ensuing trial, the State introduced evidence that Rice and Whaley used four separate bank accounts to facilitate the theft of funds from DEL.

---

[1] While employed at DEL, Rice's annual salary ranged from $42,000 to $54,000.

[2] OCGA § 16-14-4 (a) provides that "[i]t shall be unlawful for any person, through a pattern of racketeering activity or proceeds derived therefrom, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise, real property, or personal property of any nature, including money."

(a) Whaley's Hughes Services Account. On April 24, 2005, Whaley personally opened a SunTrust bank account as "Robert Whaley, d/b/a Hughes Services," and was the sole account holder. At that time, DEL conducted business with a vendor called "Hughes, MRO," to whom Rice issued checks on behalf of DEL.[3] Rice began issuing unauthorized checks made out simply to "Hughes," which were then deposited into Whaley's Hughes Services Account. Although SunTrust was only able to provide records dating back to March 2006, those records demonstrated that from that date until Whaley closed the account on February 21, 2007, 256 checks totaling over $50,000 were deposited into Whaley's Hughes Services Account. Of that amount, only approximately $5,000 of the deposited funds were not connected to DEL.

Whaley used this to make cash withdrawals and pay personal bills. Additionally, over $27,000 was funneled back to Rice in the form of checks made payable to her.

(b) Whaley's and Rice's Joint LGE Account. Whaley and Rice owned a joint LGE account, which they opened in 2003 (the "Joint Account"). Rice's paychecks from DEL were directly deposited into the this account, and stolen funds were

---

[3] In 2007, Hughes, MRO was purchased by another company and its business relationship with DEL ended.

funneled to the Joint Account from Whaley's Hughes Services Account using checks written to Rice. The Joint Account was also used to pay Whaley's personal bills, and Whaley cashed checks written to himself from the Joint Account.

(c) Rice's Hughes Account. In March 2007, during a time that Whaley and Rice were having trouble in their relationship, Rice opened a different "Hughes" account at Regions Bank named Sharron Rice d/b/a Hughes. Rice testified that Rice's Hughes Account was meant to be "a continuation" of Whaley's Hughes Services Account in that its purpose was to deposit funds stolen from DEL. Rice wrote checks to Whaley from Rice's Hughes Account and its funds were also used to pay for Whaley's personal bills.

(d) Whaley's Personal Bank Account. Whaley maintained a personal checking account with SunTrust Bank. He deposited into this Personal Account checks written from Rice's Hughes Account.

Rice admitted that the purpose of moving funds stolen from DEL between the various accounts was to "wash" the money, which is a common practice among white collar criminals and is intended to make it difficult to determine the source and/or volume of stolen funds.

5

The State also admitted extrinsic act evidence pursuant to OCGA § 24-4-404 (b) of Whaley's 2005 guilty plea under the First Offender Act to theft by taking. Specifically, the State presented evidence that Whaley, while working as a computer technician, stole approximately $16,000 worth of computer equipment from a hospital with whom his employer had contracted and attempted to sell the equipment on eBay. He entered a guilty plea on April 25, 2005, and pursuant to the plea agreement, was ordered to pay $16,000 in restitution. He opened Whaley's Hughes Services Account the day before he entered his plea.

The jury found Whaley the jury found Whaley guilty, both individually and as a party to a crime, with conspiring to violate and with violating the RICO Act by acquiring money, directly and indirectly, through a pattern of racketeering activity.[4] The trial court denied his motion for new trial, and this appeal follows.

1. The evidence set forth above was sufficient for a rational trier of fact to conclude that Whaley conspired with Rice to acquire money, directly and indirectly, through a pattern of racketeering activity in violation of OCGA § 16-14-4 (a). See OCGA § 16-14-3 (5) (A) (xii) ("'Racketeering activity' means to commit, [or] to

---

[4] Whaley's guilty verdict on the conspiracy count merged for sentencing purposes, and he was acquitted on a third count alleging a RICO violation.

6

attempt to commit . . . any crime which is chargeable by indictment under the laws of this state involving . . . theft.”); see generally *Akintoye v. State*, 340 Ga. App. 777, 782 (1) (d) (798 SE2d 720) (2017); *Brown v. State*, 321 Ga. App. 198, 204 (4) (739 SE2d 118) (2013).

Although Whaley maintains that he was not aware of the fraudulent nature of the funds, it was entirely within the purview of the jury to reject that defense. See *Lopez v. State*, 291 Ga. App. 210, 212 (661 SE2d 618) (2008) (“[I]ssues of witness credibility . . . [are] solely within the province of the jury and play no part in this Court’s sufficiency of the evidence review.”) (citation and punctuation omitted).

Further, Whaley’s contention that the amount of money used for his benefit was small relative to the amount used for the benefit of Rice does not render the evidence insufficient. As a co-conspirator and party to a crime, the racketeering activity underlying Whaley’s RICO violation included not only the acts of himself, but also of Rice.

> [I]f two or more persons enter into a conspiracy, any act done by any of them pursuant to the agreement is, in contemplation of law, the act of each of them and they are jointly responsible therefor. This means that everything said, written, or done by any of the conspirators in execution or furtherance of the common purpose is deemed to have been said, done, or written by each of them. And this joint responsibility extends

7

not only to what is done by any of the conspirators pursuant to the original agreement but also to collateral acts incident to and growing out of the original purpose, so long as they are a natural and probable consequence of the conspiracy.

(Citations, punctuation, and emphasis omitted.) *Hicks v. State*, 295 Ga. 268, 272 (1) (759 SE2d 509) (2014); see also OCGA § 16-2-21 ("Any party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto . . . .") It follows that the trial court did not err in denying Whaley's motion for new trial on the basis that the evidence was insufficient to support his RICO conviction.

2. Whaley further argues that his RICO prosecution was time barred because the last overt act alleged against him occurred more than five years prior to August 23, 2013, the date the indictment was filed. The statute of limitations for a RICO violation is set forth in OCGA § 16-14-8,[5] which provides that, "a criminal . . . action or proceeding under this chapter may be commenced up until five years after the

_____

[5] OCGA § 16-14-8 has since been amended; however, the effective date of the amended statute was July 1, 2015. See Ga. L. 2015, Act 98, § 2-25. Because the crime was committed and the case was tried before that date, the amended statute is not applicable to this case.

conduct in violation of a provision of this chapter terminates or the cause of action accrues."[6]

Whaley specifically asserts that because Whaley's Hughes Services Account was closed on February 21, 2007, and because evidence showing the ATM/withdrawal history of his Personal Account ended in January 2008, any alleged conspiracy between himself and Rice necessarily ended by that time, more than five years before the indictment. This argument fails for several reasons.

First, as discussed in Division 1, Whaley was responsible for all acts committed in furtherance of the criminal endeavor, and Rice's unlawful conduct continued until it was discovered in 2012. See OCGA § 16-2-21; *Hicks*, 295 Ga. at 272 (1). Further, contrary to Whaley's assertion, he is not entitled to the defense that he withdrew from a conspiracy with Rice, because he never admitted to having engaged in the conspiracy. See generally OCGA § 16-4-9 ("A coconspirator may be relieved from [the offense of conspiracy to commit a crime] if he can show that before the overt act

---

[6] OCGA § 16-14-3 (4) (A) additionally requires that any predicate acts alleged to form a "pattern of racketeering activity" must have occurred "within four years, excluding any periods of imprisonment, after the commission of a prior act of racketeering activity." That statute is not applicable under these facts because there is no four year gap between any of the predicate acts alleged in the indictment and that form the basis of the racketeering activity.

occurred he withdrew his agreement to commit a crime"); *Fallings v. State*, 232 Ga. 798, 799 (2) (209 SE2d 151) (1974). Finally, as admitted by Whaley in his appellate brief, regardless of when he closed his accounts, checks were written to him from Rice's Hughes Account as late as August 31, 2011. Consequently, Whaley's RICO prosecution was not time barred.

3. Whaley contends that the trial court erred in admitting evidence of his prior crime, asserting that it was irrelevant and overly prejudicial pursuant to OCGA § 24-4-404 (b). He further argues that his trial counsel rendered ineffective assistance by failing to make the proper objection to the evidence.

(a) Since Whaley's trial counsel failed to object at trial to evidence of the extrinsic acts on the grounds raised on appeal, we review the trial court's admission of the evidence for "plain error[ ] affecting substantial rights." OCGA § 24-1-103; see *Gates v. State*, 298 Ga. 324, 326 (3) (781 SE2d 772) (2016). Under the plain error analysis:

> [f]irst, there must be an error or defect—some sort of deviation from a legal rule—that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of

the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citations and punctuation omitted.) *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016).

The trial court admitted the extrinsic act evidence for the purpose of proving, among other things, Whaley's motive.[7] Whaley contends that its admission was erroneous because the evidence was not substantially relevant to an issue other than Whaley's bad character and was otherwise overly prejudicial.

The admission of extrinsic act evidence for trials occurring after January 1, 2013 is governed by OCGA § 24-4-404 (b), which provides, in pertinent part, that

> [e]vidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

---

[7] The trial court also admitted the extrinsic act evidence to prove Whaley's knowledge, plan, and lack of mistake. Because we conclude that the evidence was properly admitted to prove Whaley's motive, however, it is unnecessary for us to examine the additional grounds considered by the trial court.

11

Prior to the admission of this evidence, "the moving party must show that: (1) the evidence is relevant to an issue other than the defendant's character, (2) the probative value is not substantially outweighed by undue prejudice under OCGA § 24-4-403, and (3) there is sufficient proof so that the jury could find that the defendant committed the acts." *Booth v. State*, __ Ga. __ (3) (804 SE2d 104) (2017); see *State v. Jones*, 297 Ga. 156, 158-59 (1) (773 SE2d 170) (2015). "Rule 404 (b) is a rule of inclusion, but it does prohibit the introduction of [extrinsic act] evidence when it is offered for the sole purpose of showing a defendant's bad character or propensity to commit a crime." *Booth*, __ Ga. at __ (3).

(i) Motive is "the reason that nudges the will and prods the mind to indulge the criminal intent," and is an entirely proper purpose to admit evidence of extrinsic acts. (Citation and punctuation omitted.) *Bradshaw v. State*, 296 Ga. 650, 657 (3) (769 SE2d 892) (2015); see OCGA § 24-4-404 (b). Because evidence of Whaley's prior theft was being offered to show motive, the State was not required to show an overall similarity between the prior crime and the RICO violations with which he was charged. See *Brooks v. State*, 298 Ga. 722, 726 (2) (783 SE2d 895) (2016) ("Overall similarity between the charged crime and the extrinsic offense is not required when the offense is introduced to show motive.") (citation and punctuation omitted).

12

Instead, the prior theft needed to have *"any tendency* to make the existence of *any fact that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." (Citation and punctuation omitted.) *Olds v. State*, 299 Ga. 65, 74-75 (2) (786 SE2d 633) (2016); see OCGA § 24-4-401.

The evidence showed that Whaley opened Whaley's Hughes Services Account the day before he entered into a First Offender plea agreement pursuant to which he was ordered to pay $16,000 in restitution. That same account was then used to "wash" a significant amount of stolen funds and to provide Whaley with cash and pay his personal expenses. The trial court was authorized to conclude that the prior plea and resulting restitution obligation was relevant to the issue of whether Whaley may have been motived to engage with Rice in the racketeering activity for which he was later tried and convicted. See generally OCGA § 24-4-404 (b); *Anthony v. State*, 298 Ga. 827, 832-33 (4) (785 SE2d 277) (2016); *Harris v. State*, 338 Ga. App. 778, 780-81 (792 SE2d 409) (2016).

(ii) Having determined that the trial court was authorized to conclude that the extrinsic act evidence was relevant, we must also consider whether it should have been excluded under OCGA § 24-4-403, which provides for the exclusion of relevant

13

evidence if, among other things, "its probative value is substantially outweighed by the danger of unfair prejudice."

> Relevance and probative value are related, but distinct, concepts. Relevance is a binary concept—evidence is relevant or it is not—but probative value is relative. Evidence is relevant if it has *any tendency* to prove or disprove a fact, whereas the probative value of evidence derives in large part from the *extent to which* the evidence tends to make the existence of a fact more or less probable. Generally speaking, the greater the tendency to make the existence of a fact more or less probable, the greater the probative value. And the extent to which evidence tends to make the existence of a fact more or less probable depends significantly on the quality of the evidence and the strength of its logical connection to the fact for which it is offered. Probative value also depends on the marginal worth of the evidence—how much it adds, in other words, to the other proof available to establish the fact for which it is offered. The stronger the other proof, the less the marginal value of the evidence in question. And probative value depends as well upon the need for the evidence. When the fact for which the evidence is offered is undisputed or not reasonably susceptible of dispute, the less the probative value of the evidence.

(Citations and punctuation omitted.) *Olds*, 299 Ga. at 75-76 (2). Although the application of Rule 403 is a matter committed principally to the discretion of the trial courts, our Supreme Court has cautioned that "the exclusion of evidence under Rule

14

403 is an extraordinary remedy which should be used only sparingly." (Citation, punctuation, and footnote omitted.) Id. at 70 (2); see *Hood v. State*, 299 Ga. 95, 103 (4) (786 SE2d 648) (2016) ("The major function of Rule 403 is to exclude matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (citation and punctuation omitted). Finally, "in reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Anglin v. State*, __ Ga. __, *4 (3) (Case No. S17A1153, decided Oct. 16, 2017).

Using these factors, Rule 403 did not require the exclusion of evidence of Whaley's prior crime. In light of the fact that Rice was the direct actor with respect to the theft of DEL's funds, the State was required to prove that Whaley knowingly joined in her plan to commit the crime. Certainly evidence that he had incurred a substantial financial obligation near the time that the conspiracy was alleged to have begun had a tendency to make his participation in the conspiracy more probable, and its logical connection to establishing Whaley's motive was strong. Moreover, the extrinsic act evidence was not cumulative of other evidence tending to establish motive. It follows that the probative value of the evidence was high and was not substantially outweighed by its prejudicial effect. See *Anglin*, __ Ga. at *4 (3)

15

(affirming the trial court's admission of evidence related to appellant's gang membership to show motive, while recognizing that "in a criminal trial, inculpatory evidence is inherently prejudicial; it is only when *unfair* prejudice substantially outweighs probative value that the rule permits exclusion.") (citation and punctuation omitted); *Smart v. State*, 299 Ga. 414, 419 (2) (b) (788 SE2d 442) (2016) (affirming the trial court's admission of extrinsic act evidence because it tended to explain why appellant committed the crimes for which he was on trial). Accordingly, Whaley has failed to show that the admission of the evidence was erroneous under OCGA § 24-4-404 (b), much less that any alleged legal error was "clear or obvious" so as to warrant him a new trial. (Punctuation omitted.) *Gates v. State*, 298 Ga. 324, 327 (3); see *Patch v. State*, 337 Ga. App. 233, 242-43 (2) (786 SE2d 882) (2016).

(b) Whaley also asserts that his trial counsel rendered ineffective assistance for failing to timely raise the proper objection to the extrinsic act evidence. In order to succeed on his claim for ineffective assistance of counsel, however, Whaley must establish both that his trial court's performance was deficient, and that the deficiency prejudiced his defense; the failure to show either prong is fatal to his claim. See *Mosley v. State*, 611, 296 Ga. App. 746, 749 (2) (675 SE2d 607) (2009). Because the evidence related to Whaley's prior theft was admissible pursuant to OCGA § 24-4-

16

404 (b), his trial counsel's failure to object to the evidence on the grounds raised on appeal cannot support a claim for ineffective assistance of counsel. See *Towry v. State*, 304 Ga. App. 139, 144 (2) (a) (695 SE2d 683) (2010) ("The failure to pursue a futile objection does not constitute deficient performance.")

For all the foregoing reasons, we affirm Whaley's conviction.

*Judgment affirmed. Ellington, P. J., and Andrews, J., concur.*