**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**May 14, 2018**

# In the Court of Appeals of Georgia

A18A0400. CUMMINGS v. THE STATE.

BETHEL, Judge.

Amanda Michelle Cummings appeals from the denial of her motion for a new trial following her conviction for manufacturing methamphetamine, trafficking methamphetamine, manufacturing methamphetamine in the presence of a child, and misdemeanor possession of marijuana. On appeal, she challenges the sufficiency of the evidence presented by the State, arguing that it failed to demonstrate her active participation in each of the crimes for which she was convicted. Cummings also argues that the trial court erred by sustaining the State's objection to her question of an expert witness regarding the process for manufacturing methamphetamine, which she claims went to the heart of her defense. She further argues that the trial court erred by admitting records of pseudoephedrine purchases because such records were

more prejudicial than probative and because the admission of the records permitted the State to introduce character evidence without providing notice of its intent to do so under Rule 404 (b). Finally, Cummings argues that the trial court imposed a waiver of her Fourth Amendment rights during sentencing without her express consent and without determining that she was making a knowing, voluntary, and intelligent waiver of those rights. For the reasons set forth below, we affirm her convictions for manufacturing methamphetamine, trafficking methamphetamine, and manufacturing methamphetamine in the presence of a child. We reverse her conviction for possession of marijuana.

On appeal, the defendant "is no longer presumed innocent and all of the evidence is to be viewed in the light most favorable to the jury verdict." *Batten v. State*, 295 Ga. 442, 443 (1) (761 SE2d 70) (2014) (citation omitted). So viewed, the evidence showed that the Columbia County Sheriff's Office (CCSO) became aware that methamphetamine was being produced at a certain residence. Through the use of an informant, CCSO conducted a controlled buy of methamphetamine from Cummings at that residence.

Based on the controlled buy, CCSO obtained a search warrant for the residence and later conducted a search. CCSO found marijuana just outside one of the windows

2

to the residence. Inside the residence's detached garage, the deputies found a burn barrel containing batteries that had been cut open with the lithium strips removed, along with burned ash. The deputies also found a coffee grinder which contained pseudoephedrine residue, a bottle of muriatic acid, two bottles of Coleman fluid, Drano crystals containing sodium hydroxide, and gas generator tubing. According to testimony at trial, each of these items are involved in or related to the production of methamphetamine. The deputies also located several items containing methamphetamine residue. The CCSO investigator who conducted the search of the residence testified that it appeared there had been a meth lab in the residence at some point and the accumulation of methamphetamine residue located on the items found could only have occurred through the production of methamphetamine. The investigator testified that he believed methamphetamine had recently been produced in the residence.

The deputies also seized packing bags from the residence as well as a security camera that had been installed at the residence. The investigator who conducted the search testified that drug dealers commonly maintained home security systems and that packaging bags like those recovered were commonly used for drug distribution.

Cummings lived at the residence where the controlled buy and seizure took place, although the residence was owned by her co-conspirator who also lived there. Cummings' daughter was six years old at the time. The daughter apparently lived with her grandparents several miles away but visited Cummings' residence as many as three times a week. The CCSO investigator testified that Cummings' daughter had access to most of the items recovered from the residence.

The State also obtained and introduced certain records from the National Precursor Log Exchange (NPLEx) of pseudoephedrine purchases made by Cummings and the man with whom she shared the residence. Cummings objected to the admission of the NPLEx records under Rule 403, arguing that the records were more prejudicial than probative, given that the records indicated that Cummings last purchase of pseudoephedrine was eight months prior to the date her residence was searched. Cummings also argued that the records of purchases by other individuals were likewise more prejudicial to Cummings than probative of her guilt. The State countered that because its theory of the case was that Cummings was a party to a series of crimes, evidence of the conduct of co-conspirators was relevant to, and probative of, her guilt. The trial court overruled Cummings' objection to the introduction of these records.

A jury found Cummings guilty on one count each of manufacturing methamphetamine,[1] trafficking methamphetamine,[2] manufacturing methamphetamine in the presence of a child,[3] and misdemeanor possession of marijuana.[4] The trial court sentenced her to 15 years imprisonment to be followed by seven years of probation. Among other conditions of her probation, Cummings waived her Fourth Amendment rights and agreed to submit to searches whenever requested by her probation officer or other law enforcement officers upon reasonable cause to believe that she was in violation of the law or the conditions of her probation.

Cummings later moved for a new trial, raising the same errors enumerated in this appeal. The trial court denied the motion following a hearing, and this appeal followed.

1. Cummings first argues that the State failed to present sufficient evidence upon which a rational jury could find her guilty beyond a reasonable doubt on each

---

[1] OCGA § 16-13-30 (b).

[2] OCGA § 16-13-31 (f) (1).

[3] OCGA § 16-5-73.

[4] OCGA § 16-13-2 (b).

of the charges against her. We consider the sufficiency of the evidence presented on each charge in turn.

(a) Cummings first challenges her conviction for manufacturing methamphetamine. OCGA § 16-13-30 (b) provides, in relevant part, that, "[e]xcept as authorized by [law], it is unlawful for any person to manufacture . . . any controlled substance." OCGA § 16-13-21 (4) defines "controlled substance" as "a drug, substance, or immediate precursor in Schedules I through V of Code Sections 16-13-25 through 16-13-29 and Schedules I through V of 21 C.F.R. Part 1308." Methamphetamine is a Schedule II controlled substance. *See* OCGA § 16-13-26 (3) (B).

In this case, through evidence collected during a search of the residence and expert testimony, the State presented evidence that methamphetamine had been manufactured in the residence Cummings shared with her co-conspirator. Given the large array of products involved in the production of methamphetamine, their proximity to each other in the residence, and the fact that methamphetamine was found throughout the residence, the jury heard sufficient evidence to allow it to conclude that it would have been virtually impossible for Cummings to have been unaware that methamphetamine was being produced there. *See Gentry v. State*, 281

6

Ga. App. 315, 320-21 (2) (a) (635 SE2d 782) (2006). Moreover, given the long history of purchases of pseudoephedrine by both Cummings and her co-conspirator, the jury could infer that they were purchasing precursor substances that were then being used to manufacture methamphetamine. Finally, the State presented evidence that police had observed Cummings sell methamphetamine to a confidential informant from the same residence where the methamphetamine was being produced. The State therefore presented sufficient evidence from which the jury could find that Cummings was guilty of this offense.

(b) Cummings next challenges her conviction for trafficking methamphetamine. OCGA § 16-13-31 (f) (1) provides, in relevant part, that

> any person who manufactures methamphetamine . . . or any mixture containing . . . methamphetamine . . . as described in Schedule II, in violation of this article commits the felony offense of trafficking methamphetamine . . . If the quantity of methamphetamine . . . or a mixture containing [methamphetamine] is less than 200 grams, the person shall be sentenced to a mandatory minimum term of imprisonment of ten years and shall pay a fine of $200,000.00[.]

As discussed above, the State presented sufficient evidence to support Cummings' conviction for manufacturing methamphetamine. The same evidence supports her conviction for trafficking methamphetamine, as she was charged under

7

subsection (f), of OCGA § 16-13-31, which punishes the manufacture of any quantity of methamphetamine up to 200 grams. "Given the numerous items of evidence seized from [Cummings' residence] that were indicative of the clandestine manufacture of methamphetamine, as well as the samples of substances that tested positive for methamphetamine, sufficient evidence existed to support [Cummings'] conviction of trafficking methamphetamine pursuant to OCGA § 16–13–31(f)." *Wesson v. State*, 279 Ga. App. 428, 430 (1) (631 SE2d 451) (2006) (citation omitted).

(c) Cummings next challenges her conviction for manufacturing methamphetamine in the presence of a child. OCGA § 16-5-73 (b) (1) provides that

> any person who intentionally causes or permits a child to be present where any person is manufacturing methamphetamine or possessing a chemical substance with the intent to manufacture methamphetamine shall be guilty of a felony and, upon conviction thereof, shall be punished by imprisonment for not less than two nor more than 15 years.

A child is any individual who is under the age of 18. OCGA § 16-5-73 (a) (2). "Chemical substances" includes pseudoephedrine and other chemicals used in the manufacture of methamphetamine. OCGA § 16-5-73 (a) (1). The statute provides that intent to manufacture "means but is not limited to the intent to manufacture methamphetamine, which may be demonstrated by a chemical substance's usage,

8

quantity, or manner or method of storage, including but not limited to storing it in proximity to another chemical substance or equipment used to manufacture methamphetamine." OCGA § 16-5-73 (a) (3).

In this case, the evidence established that Cummings' daughter was six years old at the time the residence was searched and evidence of the methamphetamine lab was found by CCSO. NPLEx records indicated that both Cummings and her co-conspirator had made numerous purchases of pseudoephedrine, which expert testimony established is regularly used in the manufacture of methamphetamine. The evidence also established that numerous additional items used for the manufacture of methamphetamine were found in the residence and that methamphetamine was found throughout the residence. Testimony at trial also established that, although the daughter apparently lived with her grandparents, she visited the residence as many as three times per week and maintained a bedroom there.

There was significant evidence presented by the State that methamphetamine was manufactured at the residence and that numerous of its ingredients were found there when searched by police. On these facts, given the open and obvious nature of the manufacturing operation discovered by the police when the residence was searched, the evidence established that Cummings permitted her child to be present

9

in the residence where methamphetamine was being manufactured. *See Hall v. State*, 309 Ga. App. 222, 224-25 (1) (709 SE2d 910) (2011) (evidence sufficient where defendant and child resided in residence where ingredients for manufacture of controlled substance were found).

(d) OCGA § 16-13-2 (b) provides that possession of one ounce or less of marijuana is a misdemeanor. In this case, although marijuana was found in the residence when it was searched, Cummings was not present at the time. Moreover, the evidence established that she shared the residence with her co-conspirator and that at least one other man had been living there leading up to the search of the residence.

As we have previously held, "where the sole evidence that the defendant possessed contraband arises from the inference that the owner or tenant of the dwelling possesses its contents, positive evidence that another person had the access necessary to place the contraband will dissolve the inference." *Gentry*, 281 Ga. App. at 321 (2) (b). As the State did not present evidence that the marijuana found in the search had ever been in the possession or control of Cummings, and because other people had access to the residence where the marijuana was found, the State did not present sufficient evidence to support Cummings' conviction for possession of marijuana. *See Meadows v. State*, 247 Ga. App. 634, 637 (2) (545 SE2d 76) (2001).

10

2. Cummings next argues that the trial court erred by sustaining the State's objection to testimony by its expert witness as to when methamphetamine had most recently been manufactured in the residence. We review the trial court's exclusion of this testimony for an abuse of discretion. *See Bell v. State*, 235 Ga. App. 825, 825 (510 SE2d 589) (1998).

In this case, Cummings asked the State's expert if he could determine when methamphetamine had last been manufactured at the residence through the following colloquy:

**Counsel**:

Investigator, there's just, again, no way to even estimate at what

point in the past something might have been made at this

residence?

**Witness**:

I can't go back in time and tell you with certainty the exact date,

time, and minute that meth was produced there, but what I can tell

you is, through training, knowledge, experience, and the items

that were present, one, those items generally don't stick around

long when there is meth being produced because they're used

11

pretty frequently and replenished. The other thing is that there was definitely at some point recently methamphetamine produced in that residence.

**Counsel**:

You don't know how recently though?

**Witness**:

No, sir.

**Counsel**:

We don't know if it was really on or about [the date charged in the indictment]?

**Witness**:

It could have been–it could have been 30 minutes–

**Prosecutor**: Objection, your honor.

**The Court**: What's that?

**Prosecutor**: Objection, your honor. That's for the jury to determine.

**The Court**: I think that's probably argumentative, so I'll sustain the objection.

12

In determining whether a defendant suffered harm from the limitations placed on cross-examination of a State's witness,

> we examine factors such as the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, the overall strength of the prosecution's case.

*Knox v. State*, 290 Ga. App. 49, 54 (2) (658 SE2d 819) (2008) (citation omitted).

Here, pretermitting whether the trial court's exclusion of the expert's response to the question was in error, any error was harmless because the witness had already answered essentially the same question multiple times in the colloquy with defense counsel. The witness had characterized the last production of methamphetamine as having taken place "recently" but when asked to clarify by defense counsel could not say how recently. Thus, defense counsel's specific question, whether the last manufacture of methamphetamine occurred on or about the date listed in the indictment, had indirectly been addressed through the previous questions, given that the witness had already been unable to specify on what date methamphetamine had been produced there. Thus, because the question excluded by the trial court was

13

essentially answered through other cross-examination already permitted by the trial court, we find that Cummings was not harmed by the exclusion of the specific question objected to by the State. This enumeration therefore fails.

3. Cummings also argues that the trial court erred by permitting the State to introduce NPLEx records showing purchases of pseudoephedrine by Cummings and her co-conspirator over her objection under Rule 403 that the prejudicial effect of such evidence outweighed its probative value. We disagree.

OCGA § 24-4-403 provides that "[r]elevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice[.]" "Although the application of Rule 403 is a matter committed principally to the discretion of the trial courts, our Supreme Court has cautioned that the exclusion of evidence under Rule 403 is an extraordinary remedy which should be used only sparingly." *Whaley v. State*, 343 Ga. App. 701, 708 (3) (a) (ii) (808 SE2d 88) (2017) (quoting *Olds v. State*, 299 Ga. 65, 70 (2) (786 SE2d 633) (2016)). "[I]n reviewing issues under Rule 403, we look at the evidence in a light most favorable to its admission, maximizing its probative value and minimizing its undue prejudicial impact." *Whaley*, 343 Ga. App. at 708 (3) (a) (ii).

In this case, the NPLEx records were probative of the fact that both Cummings and her co-conspirator had, on numerous prior occasions, purchased pseudoephedrine, which the evidence established is a key precursor in the manufacture of methamphetamine. Additionally, several of the records pertaining to Cummings' purchases showed that she had listed as her home address the address of the residence where the methamphetamine and evidence of methamphetamine production were found. As the issue of where Cummings resided was a contested issue in the case, this evidence was clearly probative of Cummings' living habits and her connection with that address.

Cummings argues, as she did below, that the prejudicial effect of the records derives from the fact that her last purchase of pseudoephedrine reflected in the records was eight months prior to the date the residence was searched. She argues that there is no logical connection between the purchases of pseudoephedrine shown in the NPLEx records and manufacturing of methamphetamine on or about the date listed in the indictment because the State's expert had testified that precursors used in the manufacture of methamphetamine are generally used quickly after being obtained. However, as the trial court noted, that argument goes to the weight the jury could assign to the NPLEx records, which Cummings was free to challenge through

15

cross-examination of the State's witness and her closing argument. In light of the highly deferential posture we assume in reviewing the trial court's rulings under Rule 403, we find no abuse of the trial court's discretion in admitting evidence of these records over Cummings' objection.

4. Cummings argues that the trial court imposed a waiver of her Fourth Amendment rights during sentencing without her express consent and without determining that she was making a knowing, voluntary, and intelligent waiver of those rights. She requests remand for resentencing.

This Court has previously recognized that a defendant's Fourth Amendment rights can be waived as a condition of probation. *See Reece v. State*, 257 Ga. App. 137, 139 (2) (a) (570 SE2d 424) (2002). Moreover, when the defendant is represented by counsel at sentencing and the validity of the waiver is not challenged at that time, the defendant has forfeited his right to challenge the waiver. *Id*. Where the defendant does not perfect an objection to the probation condition but instead concedes to the terms of the probation, the waiver of Fourth Amendment rights is valid. *See Brooks v. State*, 292 Ga. App. 445, 447-49 (1) (664 SE2d 827) (2008).

At the hearing on Cummings' motion for new trial, the trial court noted that Cummings raised no objection to the Fourth Amendment waiver at sentencing even

16

though trial counsel was asked directly at the conclusion of the proceeding if there were any matters that needed to be addressed. We agree with the trial court that trial counsel's failure at that time to raise any issue with the Fourth Amendment waiver is fatal to Cummings' argument on appeal.

Moreover, the facts of this case are readily distinguishable from our Supreme Court's decision in *Fox v. State*,[5] which Cummings principally relies upon in her brief. In *Fox*, the defendant entered a negotiated plea in which he was to receive probation as part of the sentence. There was no discussion of a Fourth Amendment waiver as part of the plea negotiation, and the defendant was told the waiver of his Fourth Amendment rights would be a condition of his probation only after the sentence had been imposed and without an opportunity to consult with his counsel. *Fox*, 272 Ga. at 163-65. The Supreme Court found the waiver invalid. *Id*. at 164-65 (1).

Here, in contrast, the issue of the Fourth Amendment waiver was specifically discussed on the record before the trial court entered the sentence and while Cummings was accompanied by counsel. Cummings did not question or object to the waiver at the time, though she had every opportunity to do so. On these facts, we find

---

[5] 272 Ga. 163 (527 SE2d 847) (2000).

no error in the trial court's imposition of the Fourth Amendment waiver as a condition of probation.

*Judgment affirmed in part and reversed in part. Ellington, P. J., and Senior Appellate Judge Herbert E. Phipps, concur*.